IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| FRED L. PLUMP,<br><br>             Plaintiff,<br><br>   v.<br><br>HONORABLE BOB RILEY, as Governor of<br>the State of Alabama,<br><br>             Defendant. | CIVIL ACTION NO.<br>2:07-cv-01014-MEF-CSC |

# Plaintiff's Trial Brief

## I.     Introduction

This case arises under Section 5 of the Voting Rights Act.  The complaint alleges that the State of Alabama has failed to obtain preclearance for a "practice, procedure, or prerequisite to voting" (for simplicity, "voting practice").  The specific voting-practice change is the Governor's filling of a vacancy on a county commission by appointment, when prior, precleared practice had been to use a special election.

The usual questions in a Section 5 "coverage" action are (1) whether the jurisdiction is covered by Section 4(b) of the Voting Rights Act; (2) whether the jurisdiction has adopted or enforced a voting practice which is different from an earlier voting practice (in effect on 1 November 1964 or later); and (3) whether the jurisdiction has obtained either a letter of preclearance from the U.S. Attorney General or a favorable declaratory judgment from the U.S. District Court for the District of Columbia.

First, Alabama is a covered jurisdiction. "Procedures for the Administration of Section 5 of the Voting Rights Act," 28 C.F.R Part 51 App'x (available at http://www.usdoj.gov/crt/voting/sec_5/guidelines.htm).

Second, Governor Riley's attempts to enforce the *Stokes v. Noonan,* 534 So.2d 237 (Ala. 1988), and *Riley v. Kennedy,* 928 So.2d 1013 (Ala. 2005), decisions are changes in voting procedures. *Kennedy v. Riley*, 445 F.Supp.2d 1333 (M.D. Ala. 2006) (3-judge court), *jurisdiction postponed*, 128 S.Ct. 646 (2007).

Third, *Stokes* has not been precleared in the context of Mobile County, *Kennedy v. Riley*, 2007 WL 1284912 (M.D.Ala. 1 May 2007), and has not even been submitted for preclearance in the context of Jefferson County.

Therefore, *Kennedy v. Riley* holds that the implementation of *Stokes* must be enjoined until it is precleared. *Kennedy*, 445 F.Supp.2d at 1334.

If this Court agrees that *Kennedy* was correctly decided and provides good precedent for deciding this case, your Honors may skip to the Remedy section of this brief. But Governor Riley argues that *Kennedy* was wrongly decided and throws up a myriad of reasons this Court should ignore or reconsider the *Kennedy* precedent. The remainder of this brief deals with those reasons.

## II.    Facts

### A.    Jefferson County Commission changes since 1964.

When the Voting Rights Act was adopted, Jefferson County was governed by Act 429 of the 1957 Legislature. That act called for a

2

gubernatorial appointee to fill a vacancy on the commission until the general election held at least 6 months after the vacancy.

In 1971, the Legislature adopted Act 872 which provided that a vacancy should be filled by an election called by the governor. This act was held unconstitutional by the Circuit Court in *James David Lacey v. George C. Wallace,* No. 185-533 (Jefferson Co. Circuit Court) in July 1974. The court held it to be a local act that had not been advertised as required by the Alabama Constitution.

The Legislature adopted Act 784 in the 1977 Regular Session (hereafter "Act 1977-784"), providing that when a vacancy occurs on the Jefferson County Commission, the Election Commission of Jefferson County shall call a special election. A copy of Act 1977-784 is attached to the Complaint as Exhibit A (pages 3-7). Act 1977-784 has not been repealed by the Legislature. Act 1977-784 has been precleared by the Attorney General of the United States.

Act 1977-784 was used to call elections in 1982 to fill two vacancies on the Jefferson County Commission. Commission President Tom Gloor resigned; Commissioner Chriss Doss was elected to fill his term; and Ray Moore was elected to fill Doss' previous position in a separate special election.

In 2001, Commissioner Chris McNair resigned, and on the same day Governor Don Siegelman appointed Rev. Steve Small to replace McNair. After the resignation of Commissioner McNair, the Jefferson County Election Commission did not call a special election as required by Act 1977-784.

In 2004, the Alabama Legislature enacted Act 2004-376.  Act 2004-376 changed the residency requirement for the Jefferson County Commission to one year before the date of the general election or the date of appointment. Neither the submission letter nor the letter from the U.S. Attorney General interposing no objection mentions that the Act changes the method of filling vacancies on the Jefferson County Commission.

Jefferson County Commissioner Larry Langford has been elected Mayor of the City of Birmingham. He took office on Tuesday, 13 November 2007. He resigned his seat in District 1 of the Jefferson County Commission.

After the election of Commissioner Langford as Mayor, the Jefferson County Election Commission met and unanimously adopted the resolution attached as Exhibit A to the original complaint in this action. The resolution calls an election to fill the vacancy in District 1 of the Jefferson County Commission for 5 February 2008.

### B.    Alabama Supreme Court decisions.

Two Alabama Supreme Court decisions are particularly pertinent to this case – *Stokes v. Noonan* and *Riley v. Kennedy*.  Those decisions were precipitated by suits challenging the validity of local laws applicable to Mobile County only.

In 1985, the Alabama Legislature adopted Act 85-237, a local act providing for the election of county commissioners whenever vacancies occurred on the Mobile County Commission.  *Yvonne Kennedy v. Bob Riley,* No. 2:05-cv-01100-MHT-DRB (MD Ala), Joint Stipulation Exhibit A

4

(hereafter "*Kennedy* Joint Stipulation").[1]  The Alabama Attorney General submitted Act 85-237 for preclearance on 15 April 1985.  *Kennedy* Joint Stipulation Exhibit B.  The U.S. Attorney General issued a "no objection" letter regarding Act 85-237 on 17 June 1985.  *Kennedy* Joint Stipulation Exhibit C.

Two years after Act 85-237 was enacted, a Mobile County voter filed suit to have it declared unconstitutional.  In *Stokes v. Noonan,* 534 So.2d 237 (Ala. 1988), the Alabama Supreme Court held that the subject of Act 85-237 was subsumed by general law (Ala. Code § 11-3-6) and was therefore invalid under Ala. Const. Art. IV § 105.  *Kennedy* Joint Stipulation Exhibit D.

In 2004, the Legislature adopted Act 2004-455 which amended Ala. Code § 11-3-6 to allow local laws providing methods other than gubernatorial appointment for filling vacancies.  *Kennedy* Joint Stipulation Exhibit E.  The Alabama Attorney General submitted Act 2004-455 for preclearance on 9 August 2004.  *Kennedy* Joint Stipulation Exhibit F.  The Attorney General of the U.S. issued a "no objection" letter regarding Act 2004-455 on 28 September 2004.  *Kennedy* Joint Stipulation Exhibit G.

The submission of Act 2004-455 mentioned *Stokes v. Noonan,* but did not state explicitly whether the new Act would have any effect on the previously-precleared Act 85-237.  *Kennedy* Joint Stipulation Exhibit F.

Act 85-237 provides that the Probate Judge shall call an election when there is a vacancy.  When Mobile County Commissioner Sam Jones was

---

[1] The plaintiffs have moved the Court to take judicial notice of this Joint Stipulation (*Kennedy* Doc. 14) and a Supplemental Stipulation (*Kennedy* Doc. 19).

elected Mayor of the City of Mobile, the Probate Judge of Mobile County refused to call an election, asserting that the Governor had the power to appoint. Three Mobile County legislators filed suit against the Governor and the Probate Judge in Montgomery County Circuit Court for relief including a declaration that the upcoming vacancy should be filled by special election. The suit was styled *Kennedy v. Riley*. The Kennedy plaintiffs took the position that Act 2004-455 had revived Act 85-237. Eventually, the Alabama Supreme Court decided in *Riley v. Kennedy* that Act 2004-455 had a prospective effect only; that is, only local acts passed after the effective date of Act 2004-455 could take advantage of the proviso in that Act. *Kennedy* Joint Stipulation Exhibit M.

No Alabama official submitted the *Riley v. Kennedy* decision for preclearance. *Kennedy* Joint Stipulation at ¶ 19.

### C.    The *Kennedy v. Riley* litigation in this Court.

In *Kennedy v. Riley,* this Court stated,

> This three-judge court has been convened to consider the claim of plaintiffs Yvonne Kennedy, James Buskey, and William Clark that, under § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, the State of Alabama was required, but failed, to preclear two decisions of the Alabama Supreme Court: *Stokes v. Noonan,* 534 So.2d 237 (Ala.1988), and *Riley v. Kennedy,* 928 So.2d 1013 (Ala.2005). For the reasons that follow, we hold that the state court decisions should have been precleared before they were implemented.

*Kennedy v. Riley,* 445 F.Supp.2d 1333, 1334 (M.D. Ala. 2006) (3-judge court).

The Court gave the State 90 days to obtain preclearance of the two decisions.

6

The State took almost all that time before it even made the submission (*Kennedy v. Riley,* Doc. 30).  The Attorney General interposed an objection (*Kennedy,* Doc. 35, Ex. A). The State requested reconsideration (*Kennedy,* Doc. 42, Ex. A), and the Attorney General stood by his decision (*Kennedy,* Doc. 44, Ex. A).

The Governor filed notice of appeal on 18 May 2007 (*Kennedy,* Doc. 54) and filed his Jurisdictional Statement with the Supreme Court on 17 July 2007.  The Supreme Court docketed the case as No. 07-77 and entered this order on 20 November 2007: "Further consideration of the question of jurisdiction is postponed to the hearing of the case on the merits."  *Riley v. Kennedy,* 128 S.Ct. 645 (2007).

## III.    The application of *Kennedy v. Riley* to this case

The central question in this action is the extent to which this Court should follow the decision in *Kennedy v. Riley*, 445 F.Supp.2d 1333 (M.D. Ala. 2006) (3-judge court), *jurisdiction postponed*, 128 S.Ct. 646 (2007).  Governor Riley contends that *Kennedy v. Riley* is not controlling here, because the instant action involves a different local act governing a different county with a different history of administration, and because "this Court is not required to follow the decisions of another district court."[2]  Riley response at 8.  But Governor Riley's defense in this action is based on the same legal contention this Court rejected in *Kennedy v. Riley*, i.e., the argument that two decisions

---

[2] Although the point is not critical here, a decision by different judges of this Court is still a decision of this Court.

of the state's highest court interpreting state law, *Stokes v. Noonan,* 534 So.2d 237 (Ala. 1988), and *Riley v. Kennedy,* 928 So.2d 1013 (Ala. 2005), need not be precleared under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c.

Contrast that with the Court's reasoning in *Kennedy v. Riley*:

> Here, the parties dispute what constitutes the baseline practice.  The plaintiffs argue that the baseline is Act No. 85-237, which provided for the filling of the vacancy on the Mobile County Commission by special election; they maintain that *Stokes v. Noonan* and *Riley v. Kennedy* were changes because the former invalidated the Act and the latter still refused to enforce it.   The State responds that the baseline could not be Act No. 85-237 because the Alabama Supreme Court declared it unconstitutional;  the State posits that *Stokes v. Noonan* and *Riley v. Kennedy* did not reflect a change but were rather a mere reaffirmation of the correct scope of the governor's preexisting appointment power under Alabama general law.
>
> We think the plaintiffs have the better argument. Because Act No. 85-237 was the most recent precleared practice put into force and effect with the election of Jones in 1987, it is the baseline against which we must determine if there was a change.   To be sure, the Alabama Supreme Court declared Act No. 85-237 unconstitutional under state law;  this was, however, after Act No. 85-237 had been put into effect.   We are required to determine the baseline "without regard for [its] legality under state law."  *Lockhart,* 460 U.S. at 133, 103 S.Ct. 998 (relying on *Perkins v. Matthews,* 400 U.S. 379, 394-395, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971)).
>
> We therefore hold that, because Act No. 85-237 is the baseline and because *Stokes v. Noonan* invalidated Act No. 85-237 and *Riley v. Kennedy* held that Act No. 85-237 was not rendered enforceable by Act No. 2004-455, *the two decisions constituted changes that should have been precleared before they were implemented.*

*Kennedy v. Riley*, 445 F.Supp.2d at 1336 (emphasis added).

Arguably, Governor Riley is precluded by principles of collateral estoppel from relitigating the issue whether *Stokes v. Noonan* and *Riley v. Kennedy* must be precleared before their holdings may be enforced. This issue of law is identical to the one actually litigated in *Kennedy v. Riley*, it was a critical and necessary part of the judgment in that case, and the standard of proof was the same as it is in this case. *In re Southeast Banking Corp.*, 69 F.3d 1539, 1552 (11th Cir. 1995) (citations omitted); *accord, e.g., San Remo Hotel v. City and County of San Francisco*, 545 U.S. 323, 336 n.16 (2005) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (*quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

Whether this Court gives its earlier decision in *Kennedy v. Riley* preclusive effect under principles of collateral estoppel or whether it merely accords the earlier decision due weight under principles of *stare decisis,* it still should address the questions whether Governor Riley may rely on rulings of the Alabama Supreme Court to support his state law authority to appoint someone to fill the Jefferson County vacancy and whether he has complied with the Voting Rights Act in doing so.

## IV.    The Alabama Supreme Court has not held that the Jefferson County local act violates the State Constitution.

The Alabama Supreme Court has declared only that the Mobile County local act, Act 85-237, violates § 105 the state constitution, which

prohibits the enactment of a local law "in any case which is provided by a general law," and that Act No. 85-237 was not revived by Act No. 2004-455. *Stokes v. Noonan*, 534 So.2d at 239 ("Thus, it is our duty to declare Act No. 85-237 unconstitutional as violating § 105."); *Riley v. Kennedy*, 928 So.2d at 1017 ("Therefore, we hold that Act No. 2004-455 applies prospectively only; consequently, Governor Riley is authorized to fill the vacancy on the Mobile County Commission by appointment."). No Alabama court has held that the Jefferson County local act at issue here, Act 1977-784, violates § 105 or any other provision of the Alabama Constitution. Governor Riley has not sought a judgment like the one he obtained in the Mobile County case, nor has any other state official done so.

Instead, Governor Riley asks this Court to rule that it is not necessary for him to obtain a state court judgment declaring Act 1977-784 unconstitutional, because, under state court precedents, the Jefferson County local act "was void ab initio, and it is as if that local law never existed." Riley response at 10.[3] In other words, this Court is being asked to hold that all local laws governing the selection of county commissioners that conflict with general law are not just potentially voidable but void *ab initio*.

---

[3] See also Riley response at 12 ("here Alabama law is clear that the local Act is unconstitutional and void"); *id*. at 12 n.9 ("The Alabama Supreme Court is "the ultimate expositor[]" of Alabama law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). It has plainly held that local acts of the sort at issue here are invalid when a general law already applies, and that a subsequent amendment to the general law does not revive prior-passed local laws."); *id*. at 13 ("Jefferson County's Act No. 77-784 is invalid under State law and cannot serve as the baseline[, b]ecause that local law is void ab initio").

Should this Court so hold, the chaotic consequences for county commissions all over Alabama are staggering.  Because for a century and a half it has been the uniform practice in Alabama for counties to procure local acts that vary the method specified by general law not only for filling vacancies on their county commissions but for selecting all the commissioners in the first place.  Attached to this brief as Exhibit E is a table of local acts undersigned counsel have identified that specify varying methods of selecting commissioners in all 67 counties of Alabama.  This table shows that, notwithstanding the general law, Ala. Code § 11-3-1, which calls for all county commissions to be composed of four commissioners elected at large, with the probate judge serving as chair, very few of the 67 counties actually employ that composition and method of electing their commissioners.  Most of these local acts are silent with respect to filling mid-term vacancies, but many specify appointment by the governor[4], appointment by the remaining commissioners, or special elections.

If the *Stokes* rule had been applied to the variety of county commission forms and methods of election, there would have been no three-person county commissions (as in Jefferson and Mobile counties),[5] nor any

---

[4] This Court previously has found that following the Civil War the State of Alabama, in support of its official policy of white supremacy, instituted a policy or practice of using appointments by the Governor, who is elected by a statewide majority-white electorate, to prevent African Americans in majority-black jurisdictions from electing candidates of their choice to county commissions.  *Dillard v. Crenshaw County*, 640 F.Supp. 1347, 1358 (M.D. Ala. 1986).

[5] Section 11-3-1 calls for four commissioners plus the probate judge.

commissions without probate judges as the chairman,[6] nor any commissions elected from districts,[7] nor any commissions with staggered terms.[8]  Yet all of those forms have existed for over a century.  Likewise, Act 2004-376 establishing the residency qualifications for elected and appointed commissioner would be unconstitutional.[9]

Governor Riley's position in this action inveighs against federal usurpation of Alabama's right judicially to interpret its own constitution and laws.  But his request that this federal court hold that every local law which varies from the method provided by general law for selecting county commissioners is now void presumes that the Alabama Supreme Court would so hold in every case, notwithstanding the massive disruption of county government it would create across the state, or that, in light of these circumstances, the Alabama Supreme Court would not either overrule or strictly limit the scope of its precedents in *Stokes v. Noonan* and *Riley v. Kennedy*.  It is Governor Riley, not plaintiff Plump, who is asking a federal

---

[6] Section 11-3-1 provides that the "judge of probate … shall serve as chairman."

[7] Since elections for county commissions had been initially held at large, it could be argued that § 11-3-1's omission of any mention of districts meant that all elections were from the county at large.

[8] Section 11-3-1 provides for terms of "four years."  Any law calling for staggered terms would necessarily have to shorten or lengthen some terms initially in order to break the lockstep of simultaneous election of all commissioners every four years.

[9] Act 2004-376 requires that an appointee to or candidate for the Jefferson County Commission must have "resided in the district at least one year before" appointment or the general election.  Section 11-3-1 says nothing about residency requirements for county commissioners.

court to invade the state's sovereignty by interpreting and extending the law of Alabama.

We should keep in mind that only the 1985 *Stokes v. Noonan* decision involves interpretation of the state constitution, and that in *Riley v. Kennedy* the Alabama Supreme Court merely addressed a question of statutory construction. When it passed Act No. 2004-455, the Legislature used virtually the same phrasing it adopted when it amended § 11-3-1 in 1980 to prevent general law from subsuming all the local acts governing the composition and manner of electing county commissioners. Compare "Unless provided by local law" in the 1980 amendment of § 11-3-1, *Baldwin County v. Jenkins*, 494 So.2d 584, 586-87 (Ala. 1986), with "Unless a local law authorizes a special election" in Act No. 2004-455's amendment of § 11-3-6. The Alabama Supreme Court has never held that all the local laws passed before 1980 that vary from the general law in § 11-3-1 are invalid. There is no indication in *Riley v. Kennedy* that the Alabama Supreme Court considered such far reaching potential consequences of its ruling applying Act No. 2004-455 prospectively only or that it would reach the same conclusion were it confronted with these consequences in another case.

This Court, of course, need not concern itself with these tortured questions of state law. Its province is the enforcement of federal law, and, as shown below, there is binding U.S. Supreme Court precedent requiring preclearance of judicial changes in voting practices. If anything, the instant action demonstrates why these § 5 precedents were correctly decided. Because, as Governor Riley is demonstrating, state officials can choose

selectively to enforce judicial rulings that result in prohibited retrogression of African Americans' voting strength.  For example, the Governor did not try to interfere with the 2005 special election that filled a vacancy in a majority-white district of the Etowah County Commission, pursuant to Act No. 88-790. Nor has he sought judicial decrees striking down the local laws governing the election of all county commissioners in Mobile, Jefferson, and as many as 28 other counties.[10]

Section 5 of the Voting Rights Act does not require preclearance of state court rulings themselves, but of the particular circumstances in which state officials attempt to enforce them.  Governor Riley's interpretation of *Stokes v. Noonan* and *Riley v. Kennedy*, if applied to all local laws governing the selection of county commissioners in Alabama, would result in radical and massive changes in voting practices that have been in effect statewide for nearly two centuries.  However, he has chosen to enforce those judicial decisions in only two instances, involving majority-black districts in Mobile County and Jefferson County.  The Governor says his sense of responsibility to the majority-white constituency that elected him and the members of the Alabama Supreme Court outweighs any concern for these two smaller majority-black groups of voters.  Riley response at 20-21.  He even feels a higher obligation to the voters who ratified the 1901 Alabama Constitution, *id*. at 21, which was adopted for the purpose of disfranchising black Alabamians, who were counted out in the ratification election.  *Hunter v.*

---

[10] Some of these pre-1980 local acts were modified by federal court decrees enforcing the Voting Rights Act, and those modifications were ratified by Act No. 2006-252.

*Underwood*, 471 U.S. 222 (1985). Thus Governor Riley's position represents precisely the kind of state policies and practices that deny African Americans voting equality which Congress intended § 5 to guard against.

Thus, in the instant action, Governor Riley has demonstrated neither a state court judgment declaring Act 1977-784 unenforceable nor federal law authority, under the Voting Rights Act, for enforcing his alleged state authority to ignore the local act and appoint someone to fill the Jefferson County Commission vacancy by appointment.

## V.     The Voting Rights Act places the burden of time and inertia on the State.

Prior to the passage of the Voting Rights Act, the method of the State of Alabama and its subdivisions for resisting voting rights claims was delay and hairsplitting. Delay was accomplished by resisting every motion, every lawsuit, every demand, and every request. When faced with precedent in voting rights litigation, the sued officials' response was always to assert that there was a difference between the prior case and the current one. An injunction against a voter registration practice might have been issued against County X, but County Y asserted it was not a valid precedent for them. If an injunction had been entered against County Z's registrars, they would all resign, and their successors would resume the old practice and claim that the injunction did not apply to them. Thus, "the [U.S.] government [had to] moun[t] its attack on racial discrimination in voter registration, one county at a time, in a maddeningly slow and resource-

intensive series of suits."  Brian K. Landsberg, *Free at Last to Vote: The Alabama Origins of the 1965 Voting Rights Act,* at 20 (2007).

As the House Judiciary Committee report on the proposed Voting Rights Act stated, "The judicial process affords those who are determined to resist plentiful opportunity to resist.  Indeed, even after apparent defeat resisters seek new ways and means of discriminating.  Barring one contrivance too often has caused no change in result, only in methods."  H. Rep. No. 89-439 *as reprinted in* 1965 U.S.C.C.A.N. 2437, 2441.[11]

When South Carolina filed an original action in the Supreme Court to have the Voting Rights Act declared unconstitutional, Alabama filed an amicus brief in support of South Carolina's position.  The Supreme Court noted the need for the extraordinary remedies contained in the Act:

> The previous legislation has proved ineffective for a number of reasons.  Voting suits are unusually onerous to prepare, sometimes requiring as many as 6,000 man-hours spent combing through registration records in preparation for trial.  Litigation has been exceedingly slow, in part because of the ample opportunities for delay afforded voting officials and others involved in the proceedings.  Even when favorable decisions have finally been obtained, some of the States affected have merely

_____

[11] The Report cited two cases after those sentences.  One was *United States v. Penton*, 212 F.Supp. 193 (M.D. Ala. 1962), in which Judge Frank M. Johnson stated, "In spite of these prior judicial declarations [by this court], the evidence in this case makes it clear that the defendant State of Alabama, through some of its officers who are under a sworn duty to support and defend the Constitution of the United States 'and the laws * * * which shall be made in pursuance thereof * * *,' continues in the belief that some contrivance may be successfully adopted and practiced for the purpose of 'thwarting equality in the enjoyment of the right to vote by citizens of the United States * * *.'"  *Penton,* 212 F.Supp. at 201-02 (citations and footnotes omitted).

switched to discriminatory devices not covered by the
federal decrees or have enacted difficult new tests
designed to prolong the existing disparity between white
and Negro registration.

…

Congress exercised its authority under the Fifteenth
Amendment in an inventive manner when it enacted the
Voting Rights Act of 1965.  …  Congress had found that
case-by-case litigation was inadequate to combat
widespread and persistent discrimination in voting,
because of the inordinate amount of time and energy
required to overcome the obstructionist tactics invariably
encountered in these lawsuits.   After enduring nearly a
century of systematic resistance to the Fifteenth
Amendment, Congress might well decide to shift the
advantage of time and inertia from the perpetrators of the
evil to its victims.

*State of South Carolina v. Katzenbach,* 383 U.S. 301, 314, 327-28 (1966)

(footnotes omitted).

Now the burden is on the State or jurisdiction to seek preclearance

of a change.  A change the State seeks to enforce is never legally effective

until it has been precleared.


**VI.     The Governor has implemented a "change" in election
procedures, thereby triggering Section 5 of the Voting
Rights Act.**

Section 5 requires that Alabama seek preclearance for changes to

"any voting qualification or prerequisite to voting, or standard, practice, or

procedure with respect to voting."   42 U.S.C. § 1973c. "To determine whether

there have been changes with respect to voting, we must compare the

challenged practices with those in effect before they were adopted." *Presley v.*

*Etowah County*, 502 U.S. 491, 495.[12] As this Court has noted, "[c]hanges are measured by comparing the new challenged practice with the baseline practice, that is, the most recent practice that is both precleared and in force or effect." *Kennedy v. Riley,* 445 F.Supp.2d 1333, 1336 (M.D. Ala. 2006) (3-judge court); *see also* 28 C.F.R. § 51.54(b)(1) ("the comparison shall be with the last legally enforceable practice or procedure used by the jurisdiction."); *Abrams v. Johnson,* 521 U.S. 74, 96-97 (1997) (citing the regulation).

The benchmark (or baseline) for determining whether there has been a change is Act 1977-784, which required the county election commission to call an election. The Governor has ignored that law and has appointed Mr. Bowman to fill the vacancy created by the resignation of Commissioner Larry Langford. The Governor takes the position that Act 1977-785 was voided by the decision in *Stokes v. Noonan.*

The Governor took the same position position in early 2007 when his attorney wrote to Attorney General Gonzales, seeking reconsideration of the objection of the Attorney General to preclearance of the implementation of *Stokes* and *Riley:*

_____

[12] The Supreme Court has also made clear that once a change from the practice in force or effect on the date of § 5 coverage (for Alabama, 1 November 1964) has been precleared, any change from the precleared practice must itself be precleared before it can take effect. *See, e.g.*, *Presley*, 502 U.S. at 495 ("To determine whether there have been changes with respect to voting, we must compare the challenged practices with those in existence before they were adopted."). Only when there have not been "intervening changes [does] the Act require[] [the Supreme Court] to use practices in existence on November 1, 1964 as [its] standard of comparison." *Id*. *See also*, 28 C.F.R. § 51.12 (providing that preclearance is required for any change in voting practice, even one that "returns to a prior practice or procedure").

### Scope of *Stokes v. Noonan*

Mobile County was not the only county with a local law purporting to authorize a special election to fill a vacancy on a county commission at the time that *Stokes v. Noonan* was decided. The State is aware of similar local acts in Jefferson County (Act No. 77-784), Randolph County (Act No. 80-291), Houston County (Act No. 86-174), Macon County (Act No. 87-527) and Etowah County (Act No. 88-790). The Macon County law applied only to the election of the Chairman of the County Commission in 1987, so it should be regarded as sui generis. While only the Mobile County local law, Act No. 85-237, was at issue in the decision of *Stokes v. Noonan,* the State believes that, when it was decided, ***Stokes v. Noonan* cast a pall over the other local laws, rendering them vulnerable to the same kind of challenge.** That is, each local law was vulnerable to a challenge that it violated article IV, § 105 of the Alabama Constitution because it was a local law purporting to govern a subject-the filling of vacancies on county commissions-subsumed by general law, Ala. Code § 11-3-6.

Letter from Troy King to Alberto Gonzales, January 30, 2007 (emphasis added).

But the Governor wants to have it both ways.  On the one hand, he looks to *Stokes* as the basis of his authority to appoint a commissioner (that is, to invalidate a local law providing for a special election).  On the other, he contends that this Court's holding in *Kennedy v. Riley* (that the *Stokes* decision could not be enforced without preclearance) applied only to Mobile County and that the objection by the Attorney General to the use of *Stokes* applied only to Mobile County.

For nearly forty years, it has been clear beyond dispute that converting offices from elected to appointed constitutes a change with respect to voting that requires preclearance under § 5.  *See Allen v. State Bd. of*

*Elections,* 393 U.S. 544, 570 (1969); *see also* 28 C.F.R. § 51.13. The Governor nonetheless offers several reasons why the change from special election to gubernatorial appointment did not constitute a "change" within the meaning of § 5. None has any merit.

### A. Section 5 applies to any implementation of a change in election practices, no matter the source.

The Governor contends, "A State court decision, where the court simply interprets State law, is not subject to the preclearance requirements of Section 5." Riley response at 13. The very first case the Governor cites after that statement is *Hathorn v. Lovorn,* 457 U.S. 255 (1982) – a case which belies the Governor's point. In *Hathorn*, officials in Winston County, Mississippi, declined to implement a 1964 state statute calling for election of school board members by district, believing that the law violated the state constitution's prohibition against local legislation. *Hathorn,* 457 U.S. at 258. In 1979, the Mississippi Supreme Court excised the offending aspects of the 1964 legislation and ordered the county to begin holding elections by district. *Hathorn,* 457 U.S. at 259. The Supreme Court held that the change required preclearance. The "presence of a court decree does not exempt the contested change from § 5." *Hathorn,* 457 U.S. at 265-66 & n.16. Moreover, it was "immaterial" that the change was required in order to bring the jurisdiction into compliance with state law. *Hathorn,* 457 U.S. at 265 n.16. Section 5, the Court explained, "comes into play whenever a covered jurisdiction departs from an election practice that was "in fact 'in force or effect.'" *Hathorn,* 457 U.S. at 265 n.16 (quoting *Perkins*, 400 U.S. at 395).

The Governor never discusses the holding of *Hathorn*, but dismisses the applicability of the case because it "involved an injunction requiring an election," Riley response at 14. One reads Section 5 and the Justice Department's Section 5 Guidelines in vain looking for a distinction between calling an election and forbidding an election. The Governor provides no logical reason why depriving the people of a vote (as the Governor is doing here) does not have to be precleared, but calling an election (as in *Hathorn*) must be submitted for preclearance.

Similarly, the Governor cites *Branch v. Smith*, 538 U.S. 254 (2003), but brushes off the precedent because the Mississippi court's decision was "more like an 'enactment'" and "more legislative than judicial in character." But the U.S. Supreme Court made no such distinction. It held, "The Act requires preclearance of *all* voting changes, and there is no dispute that this includes voting changes mandated by order of a state court." *Branch v. Smith*, 538 U.S. 254, 262 (2003) (citations omitted; emphasis in original).

### B. The 2001 gubernatorial appointment of a commissioner does not change the benchmark against which the Governor's present action is to be measured.

The Governor argues that Act 1977-784 was void *ab initio*, so it cannot be used as the benchmark. Instead, he argues that the 2001 appointment by Governor Siegelman of Rev. Small might be an appropriate benchmark. Riley response at 8-9.

This is inconsistent with the Section 5 regulations issued by the Justice Department:

(3) The implementation and use of an unprecleared
voting change subject to section 5 review under § 51.18(a)
does not operate to make that unprecleared change a
benchmark for any subsequent change submitted by the
jurisdiction.  See § 51.18(c).

28 C.F.R. § 51.54(b)(3).  (Section 51.18 relates to changes ordered in certain

circumstances by federal courts.)  See also *Texas v. United States,* 785

F.Supp. 201, 205 n.3 (D. D.C. 1992) (3-judge court) ("If a court-ordered plan

for which preclearance under section 5 is necessary (that is, a plan that

reflects the policy choices of the submitting authority) has not, in fact, been

precleared as required, it cannot serve as a benchmark for subsequent

changes submitted by the jurisdiction.") (citing 28 C.F.R. § 51.54(b)(3)).  Thus

Gov. Siegelman's use of an unprecleared change in state authority (allegedly

relying on *Stokes v. Noonan* not to follow local acts specifying special

elections to fill vacancies in Jefferson County) to appoint Rev. Small cannot

be the baseline here.


    **C.**    **The preclearance of Act 2004-376 did not preclear
gubernatorial appointment of Jefferson County
Commissioners.**

Governor Riley argues, "The last relevant law precleared is Local

Act No. 2004-376, which clearly contemplates that vacancies will be filled by

appointment."  Riley response at 9.

The Attorney General does not preclear acts *per se,* but preclears

the **changes** made by acts, regulations, practices, memos, and the like.  The

submitting jurisdiction must identify "any voting qualification or prerequisite

to voting, or standard, practice, or procedure with respect to voting different

from that in force and effect on November 1, 1964."[13]  The Jefferson County

Attorney who submitted Act 2004-376 to the U.S. Attorney General discussed

the reasons for and the effects of the Act, but did not state that the Act

granted authority to the Governor to make appointments to the Commission.

As this Court stated in *Ward v. Alabama,* 31 F.Supp.2d 968 (M.D.

Ala. 1998) (3-judge court):

> It has long been the law that in order to successfully
> obtain preclearance of a voting change from the Attorney
> General, the State submitting the change must "in some
> unambiguous and recordable manner submit any
> legislation or regulation in question directly to the
> Attorney General with a request for his consideration
> pursuant to the [Voting Rights] Act." The State must
> clearly identify the changes it is submitting for
> preclearance by the Attorney General.   This requirement
> helps ease the burden on the Attorney General, who each
> year must carefully review thousands of electoral
> changes. The requirement of clear identification also
> recognizes that a State may decide to leave some part of a
> statute affecting voting unenforced, whether due to an
> independent determination that the provision violates the
> Voting Rights Act, a conclusion that it conflicts with other
> state law, or for some other reason.   Without an
> unambiguous identification of the changes being
> submitted for preclearance, the Attorney General would
> have no clear idea of what she was being asked to do.

> Because the burden is on the State to submit an
> "unambiguous description of proposed changes," courts
> apply a "presumption that 'any ambiguity in the scope of
> the preclearance request' must be construed against the
> submitting jurisdiction."

---

[13] 42 U.S.C. § 1973c, § 5 of the Voting Rights Act, as amended.

*Ward,* 31 F.Supp.2d at 971-72 (citations omitted).  This Court used almost identical language in *Boxx v. Bennett,* 50 F.Supp.2d 1219, 1227 (M.D. Ala. 1999).[14]

The *Ward* Court noted, "A well-established canon of statutory construction provides that the inclusion of one implies the exclusion of others. …  The canon also makes good sense in construing submission requests such as the one before us.   By specifying that certain changes were submitted for preclearance, the State's submission letter implied that other changes were not.   At a minimum, it created an ambiguity, and ambiguities must be resolved against the submitting authority."  *Ward,* 31 F.Supp.2d at 972 (citations omitted).

## VII.    Remedy

The first step in the remedy should be a declaratory judgment that the State has violated the Voting Rights Act.

The second step should be an injunction. The Supreme Court summarized the remedies that should be granted in Section 5 cases in *Lopez v. Monterey County, Cal.,* 519 U.S. 9 (1996):

> A jurisdiction subject to § 5's requirements must obtain either judicial or administrative preclearance before implementing a voting change. No new voting practice is

---

[14] In *Ward* the State had submitted a redlined version of the sections of the Election Code modified by a newly-enacted law, but did not mention the particular change that would work to the disadvantage of Mr. Ward. Similarly, in *Boxx* the State submitted legislation and regulations concerning electronic voting but did not mention the new recount procedures contained in the regulations.

enforceable unless the covered jurisdiction has succeeded in obtaining preclearance. *Clark v. Roemer,* 500 U.S., at 652-653, 111 S.Ct., at 2100-2102;*McDaniel v. Sanchez,* 452 U.S. 130, 137, 101 S.Ct. 2224, 2229, 68 L.Ed.2d 724 (1981); *Connor v. Waller,* 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975)*(per curiam).* If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change. *Clark v. Roemer, supra,* at 652-653, 111 S.Ct., at 2100-2102 (citing *Allen v. State Bd. of Elections,* 393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969)). The District Court's order that the County conduct elections under the unprecleared, at-large judicial election plan conflicts with these principles and with our decision in *Clark v. Roemer, supra.*

...

We acknowledged in *Clark* that earlier decisions such as *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), and *Berry v. Doles,* 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978)*(per curiam),* held that where a covered jurisdiction had already conducted elections under an unprecleared plan, it might be appropriate for the district court to afford local officials an opportunity to seek federal approval before ordering a new election. 500 U.S., at 654, 111 S.Ct., at 2102. But those cases raised an issue different from the one in *Clark.* In *Perkins* and *Berry,* the District Courts confronted the question whether to set aside illegal elections that had already taken place. By contrast, the District Court in *Clark* had to decide whether to allow illegal elections to go forward in the first place. In this situation, "§ 5's prohibition against implementation of unprecleared changes required the District Court to enjoin the election." 500 U.S., at 654, 111 S.Ct., at 2102.

*Lopez*, 519 U.S. at 20-21.

In *Kennedy v. Riley,* the plaintiffs suggested that the Court follow the *Perkins-Berry* line of precedents because the Governor had already appointed a replacement commissioner and no special election was scheduled. However, in this case, the Court faces a situation (1) where the Governor had

previously been enjoined in the *Kennedy* case, (2) where the Attorney General has already interposed an objection against the implementation of the Alabama Supreme Court decision on which the Governor relies, (3) a special election has been called by the Election Commission, and (4) the Governor made his appointment after the special election was called and this suit was filed,  For these reasons, this Court should follow the *Lopez* precedent and enjoin the Governor so that the special election may go forward.

Governor Riley's contends that it would "inappropriate," but not necessary, to proceed without the Jefferson County Election Commission and General Bowman as parties.  Riley response at 21.  He cites only the rule for permissive joinder of additional parties.  But there is no point in adding these officials as parties – defendant parties, we presume Governor Riley means. Neither the Election Commission nor General Bowman can provide any of the relief the plaintiff seeks.  Only the Governor can vacate Bowman's appointment, and only the Governor can seek § 5 preclearance for his alleged authority to fill the vacancy by appointment.  If General Bowman or any other state or county official refused to comply or interfered with this Court's order vacating the appointment, he or she could be added then for enforcement purposes only.

Submitted by,

/s/ James U. Blacksher
James U. Blacksher
P.O. Box 636
Birmingham AL 35201
    phone 205-591-7238
    fax 205-591-0709
    email
jblacksher@ns.sympatico.ca

/s/ Edward Still
Edward Still
Edward Still Law Firm LLC
2112 11th Avenue South
Suite 201
Birmingham AL 35205-2844
    phone: 205-320-2882
    fax: 877-264-5513
    email: Still@votelaw.com

Attorneys for the plaintiff

## CERTIFICATE OF SERVICE

I certify that on 4 January 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Margaret L. Fleming, Esq.
James W. Davis, Esq.
Assistant Attorneys General
11 South Union Street
Montgomery, AL 36130-0152
Email: mfleming@ago.state.al.us
Email: jimdavis@ago.state.al.us

Kenneth D. Wallis, II, Esq.
Chief Legal Advisor
Scott L. Rouse, Esq.
Deputy Legal Advisor
Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery AL 36130
ken.wallis@governor.state.al.us
scott.rouse@governor.alabama.gov

/s/ James U. Blacksher

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

FRED L. PLUMP,

                Plaintiff,

      v.

HONORABLE BOB RILEY, as Governor of the
State of Alabama,

                Defendant.

CIVIL ACTION NO.
2:07-cv-01014-MEF-CSC

# Exhibit E

## To Plaintiff's Trial Brief

## In Support of Motion for Preliminary Injunction

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|--------------|---------------------|--------------------|--------------------|
| Autauga | 1875 | 185, 263 | ALR | none |
| Autauga | 1891 | 110, 252 | AL | none |
| Autauga | 1971 | 1451, 2479 | ALR | governor |
| Autauga | 1992 | 92-229, 569 | SMDs | none |
| Baldwin | 1868 | 15, 352 | AL | as prescribed by law |
| Baldwin | 1874 | 185, 263 | ALR | none |
| Baldwin | 1876 | 141, 154 | ALR | none |
| Baldwin | 1876 | 141, 154 | ALR | none |
| Baldwin | 1892 | 105, 219 | SMDs | none |
| Baldwin | 1894 | 90, 146 | ALR | none |
| Baldwin | 1927 | 177, 83 | ALR | governor |
| Baldwin | 1931 | 239, 100 | ALR | governor |
| Barbour | 1874 | 185, 263 | ALR | none |
| Barbour | 1876 | 141, 154 | ALR | none |
| Barbour | 1895 | 505, 997 | all appointed by governor | governor |
| Barbour | 1897 | 249, 658 | all appointed by governor | none |
| Barbour | 1903 | 113, ? | ALR | none |
| Barbour | 1919 | 221, 69 | SMDs and 1 AL | none |
| Barbour | 1965 | 10, 31 | ALR | governor |
| Barbour | 1967 | 171, 529 | ALR | governor |
| Barbour | 2001 | 2001-360, 465 | SMDs | none |
| Bibb | 1879 | 177, 208 | ALR | none |
| Bibb | 1907 | 492, ? | SMDs | none |
| Bibb | 1971 | 1381, 2327 | ALR | none |
| Bibb | 1980 | 80-24, 33 | SMDs, referendum | none |
| Bibb | 2004 | 2004-467, ? | SMDs | none |
| Blount | 1895 | 544, 1136 | ALR | none |
| Blount | 1939 | 173, 98 | SMDs primary AL general | none |
| Blount | 1949 | 592, 921 | SMDs primary AL general | commission |
| Blount | 1955 | 334, 754 | ALR | none |
| Blount | 1963 | 228, 626 | ALR, referendum | none |
| Blount | 1965 | 427, 627 | SMDs | none |
| Blount | 1965 | 817, 1529 | SMDs | none |
| Blount | 1967 | 661, 1484 | repeal 1963 act | none |
| Blount | 1999 | 99-656, 110 | SMDs, referendum | none |
| Bullock | 1888 | 262, 396 | SMDs | none |
| Bullock | 1892 | 105, 219 | SMDs | none |
| Bullock | 1894 | 90, 146 | SMDs | none |
| Bullock | 1965 | 536, 788 | ALR | none |
| Butler | 1892 | 105, 219 | SMDs | none |
| Butler | 1898 | 38, 66 | governor appt 1st and pres., ALR | none |
| Butler | 1899 | 485, 915 | abolish comm'rs court | none |
| Butler | 1900 | 204, 545 | repeal 1898 act | none |
| Butler | 1900 | 207, 549 | governor appt 1st, ALR | none |
| Butler | 1945 | 183, 99 | ALR | none |
| Butler | 1949 | 504, 731 | SMDs | none |
| Butler | 1969 | 136, 201 | ALR | none |
| Butler | 1983 | 83-848, 74 | SMDs | none |
| Calhoun | 1880 | 158, 195 | ALR | none |
| Calhoun | 1895 | 298, 524 | ALR | none |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;**
**SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|--------------|---------------------|--------------------|--------------------|
| Calhoun | 1923 | 286, 180 | SMDs | governor |
| Calhoun | 1939 | 420, 252 | ALR | governor |
| Calhoun | 1951 | 686, 1183 | SMDs | governor |
| Calhoun | 1985 | 85-558, 857 | SMDs and AL referendum | none |
| Chambers | 1868 | 15, 352 | AL | as prescribed by law |
| Chambers | 1884 | 344, ? | AL | none |
| Chambers | 1915 | 271, 132 | SMDs primary AL general | none |
| Chambers | 1949 | 161, 187 | SMDs | none |
| Chambers | 1951 | 734, 1287 | SMDs referendum | none |
| Chambers | 1959 | 69, 470 | ALR | governor |
| Chambers | 1971 | 2001, 3241 | ALR | governor |
| Chambers | 1973 | 475, 689 | ALR | governor |
| Chambers | 1977 | 181, 241 | SMDs | governor |
| Cherokee | 1879 | 177, 208 | ALR | none |
| Cherokee | 1939 | 250, 138 | ALR | none |
| Cherokee | 1947 | 159, 91 | SMDs | none |
| Cherokee | 1973 | 162, 206 | ALR | none |
| Chilton | 1879 | 177, 208 | ALR | none |
| Chilton | 1887 | 493, 979 | all appointed by governor | none |
| Chilton | 1891 | 191, 418 | ALR | none |
| Chilton | 1899 | 181, 375 | SMDs | none |
| Chilton | 1945 | 56, 52 | ALR | none |
| Chilton | 1951 | 872, 1505 | ALR | governor |
| Chilton | 1959 | 351, 941 | SMDs primary AL general | none |
| Chilton | 1963 | 252, 661 | ALR | none |
| Chilton | 2003 | 2003-217, 548 | SMDs | none |
| Chilton | 2007 | 2007-272, ? | SMDs | none |
| Choctaw | 1874 | 185, 263 | ALR | none |
| Choctaw | 1892 | 105, 219 | SMDs | none |
| Choctaw | 1923 | 421, 307 | ALR | governor |
| Choctaw | 1927 | 122, 41 | SMDs | governor |
| Choctaw | 1965 | 426, 626 | ALR, referendum | none |
| Clark | 1879 | 177, 208 | ALR | none |
| Clark | 1971 | 2446, 3912 | ALR | none |
| Clark | 1992 | 92-220, 532 | SMDs | none |
| Clark | 1992 | 92-386, 787 | SMDs | none |
| Clay | 1879 | 187, 219 | ALR | none |
| Clay | 1935 | 312, 189 | ALR | none |
| Clay | 1939 | 119, 68 | SMDs primary AL general | none |
| Clay | 1943 | 331, 193 | ALR | none |
| Cleburne | 1886 | 259, 635 | AL | none |
| Cleburne | 1900 | 982, 2241 | ALR | none |
| Cleburne | 1967 | 207, 571 | SMDs | none |
| Cleburne | 1984 | 84-737, 77 | SMDs, referendum | none |
| Cleburne | 2003 | 2003-326, 804 | SMDs | none |
| Coffee | 1927 | 630, 395 | SMDs | none |
| Coffee | 1953 | 571, 813 | ALR, referendum | none |
| Coffee | 1971 | 1259, 2175 | home rule authority | none |
| Coffee | 2003 | 2003-218, 549 | SMDs | none |
| Colbert | 1945 | 184, 101 | ALR | none |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;**
**SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|------|-----------|-----------|-----------|
| Colbert | 1949 | 131, 157 | ALR | governor |
| Colbert | 2005 | 2007-138, ? | SMDs | none |
| Conecuh | 1873 | 66, 107 | ALR | none |
| Conecuh | 1919 | 311, 118 | SMDs | none |
| Conecuh | 1927 | 324, 241 | SMDs | commission |
| Conecuh | 1939 | 584, 349 | ALR | commission/ governor |
| Conecuh | 1945 | 177, 91 | SMDs | commission/ governor |
| Conecuh | 1971 | 2284, 3686 | MMDs | none |
| Conecuh | 1984 | 84-641, 1290 | SMDs | none |
| Conecuh | 1986 | 86-322, 480 | SMDs | as prescribed by law |
| Conecuh | 2000 | 2000-466, 868 | SMDs | none |
| Coosa | 1874 | 185, 263 | ALR | none |
| Coosa | 1876 | 141, 154 | ALR | none |
| Coosa | 1953 | 128, 176 | SMDs, referendum | none |
| Coosa | 1986 | 86-239, 362 | SMDs | as prescribed by law |
| Coosa | 1994 | 94-556, 1022 | SMDs | as prescribed by law |
| Covington | 1879 | 177, 208 | ALR | none |
| Covington | 1911 | 249, 231 | all appointed by governor | governor |
| Covington | 1915 | 48, 98 | SMDs | commission |
| Covington | 1919 | 20, 8 | SMDs | none |
| Covington | 1945 | 22, 23 | SMDs | governor |
| Covington | 1971 | 2219, 3564 | ALR | none |
| Crenshaw | 1879 | 177, 208 | ALR | none |
| Crenshaw | 1919 | 670, 255 | ALR | none |
| Crenshaw | 1971 | 112, 192 | ALR | none |
| Cullman | 1897 | 647, 1462 | SMDs | governor |
| Cullman | 1903 | 173, ? | AL | governor |
| Cullman | 1903 | 173, 200 | AL | governor |
| Cullman | 1936 | 126, 70 | AL | governor |
| Cullman | 1939 | 357, 244 | AL | governor |
| Cullman | 1951 | 449, 801 | ALR | governor |
| Cullman | 1955 | 13, 37 | ALR | governor |
| Cullman | 1959 | 167, 690 | AL | governor |
| Cullman | 1977 | 469, 612 | ALR | none |
| Dale | 1866 | 473, 537 | SMDs | election |
| Dale | 1871 | 326, 371 | repeal 1866 act | none |
| Dale | 1879 | 177, 208 | ALR | none |
| Dale | 1896 | 161, 378 | ALR | none |
| Dale | 1979 | 79-643, 1125 | SMDs, referendum | none |
| Dale | 1984 | 84-632, 1282 | ALR | none |
| Dallas | 1875 | 265, 385 | all appointed by governor | none |
| Dallas | 1901 | 328, 890 | ALR | governor |
| Dallas | 1949 | 196, 227 | passed over governor's veto | commission/ governor |
| DeKalb | 1874 | 185, 263 | ALR | none |
| DeKalb | 1876 | 141, 154 | ALR | none |
| DeKalb | 1892 | 105, 219 | SMDs | none |
| DeKalb | 1939 | 255, 147 | SMDs | governor |
| DeKalb | 1955 | 368, 889 | SMDs primary AL general | governor |
| DeKalb | 1961 | 444, 482 | ALR | none |
| DeKalb | 1969 | 447, 889 | ALR | none |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;
SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|------|----------|----------------|----------------|
| DeKalb | 1997 | 97-557, 989 | SMDs | none |
| Elmore | 1874 | 185, 263 | ALR | none |
| Elmore | 1915 | 466, 373 | SMDs primary AL general | none |
| Elmore | 1971 | 255, 568 | ALR | none |
| Elmore | 1984 | 84-656, 1307 | ALR | none |
| Elmore | 1985 | 85-713, 1165 | SMDs | none |
| Elmore | 1992 | 92-219, 530 | SMDs | as prescribed by law |
| Escambia | 1879 | 177, 208 | ALR | none |
| Escambia | 1900 | 72, ? | SMDs | none |
| Escambia | 1943 | 231, 129 | SMDs | governor |
| Escambia | 1963 | 411, 912 | ALR | none |
| Etowah | 1890 | 13, 12 | ALR | none |
| Etowah | 1915 | 117, 31 | ALR | none |
| Etowah | 1966 | 343, 487 | SMDs | none |
| Etowah | 1988 | 88-790, 227 | vacancies all county offices by election | election/ commission |
| Etowah | 1995 | 95-274, 483 | SMDs | none |
| Fayette | 1874 | 185, 263 | ALR | none |
| Fayette | 1876 | 141, 154 | ALR | none |
| Fayette | 1890 | 571, 1302 | ALR | none |
| Fayette | 1892 | 105, 219 | SMDs | none |
| Fayette | 1894 | 90, 146 | ALR | none |
| Fayette | 1896 | 163, 280 | SMDs | none |
| Fayette | 1911 | 51, 20 | SMDs | none |
| Fayette | 1969 | 1093, 2027 | ALR | none |
| Fayette | 1971 | 381, 672 | ALR | none |
| Fayette | 1993 | 93-611, 999 | SMDs | as prescribed by law |
| Franklin | 1876 | 141, 154 | ALR | none |
| Franklin | 1885 | 193, 317 | ALR | none |
| Franklin | 1890 | 571, 1302 | ALR | none |
| Franklin | 1899 | 820, 1616 | ALR | none |
| Franklin | 1900 | 479, 1203 | all appointed by governor | none |
| Franklin | 1903 | 238, ? | ALR | none |
| Franklin | 1947 | 434, 290 | SMDs primary AL general, referendum | none |
| Franklin | 1949 | 572, 902 | SMDs primary AL general, referendum | none |
| Franklin | 1951 | 735, 1288 | SMDs primary AL general | none |
| Franklin | 1953 | 219, 286 | ALR | none |
| Franklin | 1995 | 95-560, 1170 | SMDs | as prescribed by law |
| Franklin | 1995 | 95-572, 1196 | SMDs | as prescribed by law |
| Geneva | 1869 | 109, 98 | SMDs | election |
| Geneva | 1895 | 544, 1136 | ALR | none |
| Geneva | 1985 | 85-586, 901 | SMDs, referendum | none |
| Geneva | 1988 | 88-288, 441 | SMDs | none |
| Greene | 1879 | 187, 219 | ALR | none |
| Greene | 1985 | 85-485, 477 | SMDs | none |
| Hale | 1876 | 141, 154 | ALR | none |
| Hale | 1907 | 602, 751 | SMDs | none |
| Hale | 1953 | 61, 89 | ALR | governor |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;**
**SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|------|------------|--------------------|-------------------|
| Hale | 1959 | 370, 961 | SMDs, referendum | none |
| Hale | 1965 | 320, 439 | ALR | none |
| Hale | 1971 | 2022, 3261 | AL | none |
| Hale | 1973 | 620, 925 | ALR | none |
| Henry | 1879 | 177, 208 | ALR | none |
| Henry | 1923 | 139, 58 | SMDs | none |
| Henry | 1935 | 123, 55 | ALR | as prescribed by law |
| Henry | 1939 | 631, 364 | SMDs | none |
| Henry | 1987 | 87-334, 473 | SMDs | as prescribed by law |
| Houston | 1907 | 694, ? | ALR | none |
| Houston | 1911 | 168, 172 | ALR | none |
| Houston | 1915 | 249, 75 | SMDs and AL | none |
| Houston | 1931 | 549, 266 | SMDs | governor |
| Houston | 1935 | 156, 71 | ALR | governor |
| Houston | 1935 | 438, 253 | SMDs | governor |
| Houston | 1939 | 240, 133 | SMDs | governor |
| Houston | 1949 | 599, 931 | ALR | governor |
| Houston | 1957 | 9, 30 | SMDs | governor |
| Houston | 1969 | 938, 1674 | SMDs | governor |
| Houston | 1986 | 86-174, 203 | ALR | election |
| Jackson | 1874 | 185, 263 | ALR | none |
| Jackson | 1879 | 177, 208 | ALR | none |
| Jackson | 1943 | 356, 199 | AL numbered places | none |
| Jackson | 1945 | 335, 162 | AL | none |
| Jackson | 1950 | 65, 126 | ALR | governor |
| Jackson | 1953 | 392, 463 | ALR | none |
| Jefferson | 1880 | 129, 166 | ALR | none |
| Jefferson | 1899 | 571, 1115 | AL | governor |
| Jefferson | 1931 | 271, 298 | AL | commission/ governor |
| Jefferson | 1935 | 89, 157 | AL numbered places | governor/ election |
| Jefferson | 1957 | 429, 593 | vacancies all county and state offices by election | election |
| Jefferson | 1971 | 872, 1632 | vacancies filled by election | election |
| Jefferson | 1977 | 784, 1351 | vacancies filled by election | election |
| Jefferson | 1997 | 97-147, 188 | SMDs | none |
| Lamar | 1890 | 571, 1302 | SMDs | none |
| Lamar | 1899 | 820, 1616 | SMDs | none |
| Lamar | 1969 | 1092, 2027 | ALR | none |
| Lamar | 1969 | 1247, 2348 | ALR | none |
| Lauderdale | 1874 | 185, 263 | ALR | none |
| Lauderdale | 1876 | 141, 154 | ALR | none |
| Lauderdale | 1949 | 172, 199 | ALR | none |
| Lauderdale | 1951 | 198, 459 | ALR | none |
| Lauderdale | 1971 | 2223, 3576 | MMDs | none |
| Lawrence | 1895 | 544, 1136 | ALR | none |
| Lawrence | 1939 | 310, 197 | SMDs | none |
| Lawrence | 1943 | 450, 219 | ALR | none |
| Lawrence | 1951 | 18, 220 | ALR | governor |
| Lawrence | 1955 | 213, 517 | ALR | none |
| Lawrence | 1956 | 58, 90 | ALR | none |

**Key to Method of Election: AL = at large; ALR = At large with residency districts; SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|------|------|------|------|
| Lawrence | 1959 | 47, 214 | SMDs, referendum | none |
| Lawrence | 1961 | 140, 178 | ALR | none |
| Lawrence | 1967 | 119, 166 | SMDs | governor |
| Lawrence | 2003 | 2003-222, 562 | SMDs | none |
| Lee | 1894 | 133, 238 | ALR | none |
| Lee | 2004 | 2004-373, ? | SMDs | none |
| Lee | 2004 | 2004-472, ? | SMDs | none |
| Limestone | 1874 | 185, 263 | ALR | none |
| Limestone | 1876 | 141, 154 | ALR | none |
| Limestone | 1931 | 541, 258 | ALR | governor |
| Limestone | 1955 | 181, 454 | SMDs, referendum | none |
| Lowndes | 1875 | 264, 383 | all appointed by governor | governor |
| Lowndes | 1888 | 611, 1070 | AL | none |
| Lowndes | 1894 | 111, 186 | AL | governor |
| Lowndes | 1907 | 431, ? | ALR | none |
| Lowndes | 1985 | 85-827, 84 | SMDs | none |
| Macon | 1887 | 394, 833 | all appointed by governor | none |
| Macon | 1890 | 252, 555 | AL | none |
| Macon | 1907 | 32, ? | SMDs | none |
| Macon | 1920 | 50, 176 | ALR | commission |
| Macon | 1935 | 104, 41 | SMDs primary AL general | commission |
| Macon | 1939 | 334, 225 | ALR | commission |
| Macon | 1987 | 87-527, 800 | Chair AL | governor/ election |
| Macon | 1990 | 90-436, 600 | SMDs, referendum | none |
| Macon | 1997 | 97-663, 1272 | SMDs | none |
| Madison | 1894 | 83, 135 | ALR | none |
| Madison | 1900 | 1132, 2559 | ALR | none |
| Madison | 1919 | 482, 217 | Chair AL, others appointed by governor | none |
| Madison | 1923 | 19, ? | SMDs | none |
| Marengo | 1866 | 201, 185 | SMDs | none |
| Marengo | 1919 | 352, 141 | ALR | none |
| Marengo | 1923 | 311, 188 | SMDs | governor/ election |
| Marengo | 1955 | 17, 45 | ALR | none |
| Marengo | 1966 | 44, 67 | ALR | none |
| Marion | 1874 | 185, 263 | ALR | none |
| Marion | 1876 | 141, 154 | ALR | none |
| Marion | 1879 | 187, 219 | ALR | none |
| Marion | 1890 | 571, 1302 | SMDs | none |
| Marion | 1899 | 820, 1616 | ALR | none |
| Marion | 1947 | 633, 403 | SMDs | none |
| Marion | 1971 | 1130, 1956 | SMDs | none |
| Marshall | 1888 | 146, 134 | SMDs | none |
| Marshall | 1927 | 349, 286 | ALR | governor/ election |
| Marshall | 1931 | 44, 13 | SMDs | governor |
| Marshall | 1935 | 492, 271 | SMDs | none |
| Marshall | 1936 | 89, 49 | SMDs | governor |
| Marshall | 1955 | 264, 612 | SMDs | governor |
| Marshall | 1969 | 1001, 1867 | ALR | none |
| Marshall | 1992 | 92-391, 807 | SMDs | none |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;**
**SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|-------------|---------------------|--------------------|--------------------|
| Mobile | 1868 | 15, 352 | AL | as prescribed by law |
| Mobile | 1874 | 355, 516 | AL | none |
| Mobile | 1879 | 209, 238 | repeal 1871 act | none |
| Mobile | 1888 | 153, 142 | SMDs | none |
| Mobile | 1901 | 760, 1843 | MMDs then ALR | none |
| Mobile | 1957 | 181, 233 | AL numbered places | governor |
| Mobile | 1985 | 85-237, 137 | vacancies filled by election | election |
| Monroe | 1879 | 177, 208 | ALR | none |
| Monroe | 1900 | 160, 409 | SMDs | none |
| Monroe | 1915 | 548, 395 | AL | governor |
| Monroe | 1923 | 116, 42 | SMDs | none |
| Monroe | 1939 | 211, 109 | SMDs | governor |
| Monroe | 1957 | 685, 1036 | ALR | none |
| Montgomery | 1874 | 353, 513 | all appointed by governor | governor |
| Montgomery | 1903 | 139, ? | all appointed by governor | governor |
| Montgomery | 1907 | 129, 219 | MMDs and SMDs | governor |
| Montgomery | 1923 | 583, 333 | SMDs | none |
| Montgomery | 1977 | 468, 607 | SMDs | none |
| Morgan | 1874 | 185, 263 | ALR | none |
| Morgan | 1876 | 141, 154 | ALR | none |
| Morgan | 1886 | 259, 635 | ALR | none |
| Morgan | 1919 | 729, 258 | SMDs primary AL general | none |
| Morgan | 1939 | 129, 70 | ALR | governor |
| Morgan | 1939 | 469, 287 | SMDs primary AL general | governor |
| Morgan | 1973 | 258, 291 | ALR | commission |
| Perry | 1880 | 129, 166 | ALR | none |
| Perry | 1895 | 313, 553 | ALR | none |
| Perry | 1962 | 137, 178 | SMDs, referendum | none |
| Perry | 1971 | 498, 1210 | AL | none |
| Perry | 1987 | 87-340, 496 | SMDs | none |
| Perry | 1994 | 94-371, 627 | SMDs | none |
| Pickens | 1880 | 129, 166 | ALR | none |
| Pickens | 1892 | 105, 219 | SMDs | none |
| Pickens | 1894 | 90, 146 | ALR | none |
| Pickens | 1935 | 278, 167 | SMDs primary AL general | none |
| Pickens | 1963 | 442, 975 | ALR | none |
| Pickens | 1967 | 141, 476 | SMDs primary AL general, referendum | none |
| Pike | 1879 | 177, 208 | ALR | none |
| Pike | 1887 | 475, 954 | ALR | none |
| Pike | 1888 | 543, 950 | repeal 1887 act | none |
| Pike | 1890 | 174, 394 | ALR | none |
| Pike | 1892 | 105, 219 | SMDs | none |
| Pike | 1986 | 86-323, 488 | SMDs | none |
| Randolph | 1891 | 551, 1275 | ALR | none |
| Randolph | 1965 | 229, 417 | SMDs, referendum | none |
| Randolph | 1980 | 80-291, 405 | vacancies filled by governor or election | governor/ election |
| Russell | 1874 | 185, 263 | ALR | none |
| Russell | 1890 | 152, 354 | ALR | none |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;**
**SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|------|------|------|------|
| Russell | 1919 | 284 ½, 102 | ALR | governor |
| Russell | 1931 | 204, 65 | ALR | governor |
| Russell | 1932 | 91, 35 | ALR | governor |
| Russell | 1945 | 33, 40 | ALR | governor |
| Russell | 1949 | 520, 776 | ALR | governor |
| Russell | 1997 | 97-680, 1329 | SMDs | none |
| Shelby | 1890 | 152, 354 | ALR | none |
| Shelby | 1892 | 105, 219 | SMDs | none |
| Shelby | 1911 | 134, 154 | all appointed by governor | governor |
| Shelby | 1915 | 326, 199 | ALR | none |
| Shelby | 1919 | 298, 115 | SMDs | none |
| Shelby | 1949 | 179, 206 | ALR | governor |
| Shelby | 1959 | 44, 448 | SMDs | none |
| Shelby | 2003 | 2003-212, 540 | SMDs | none |
| St. Clair | 1886 | 259, 635 | AL | none |
| St. Clair | 1957 | 481, 663 | SMDs | governor |
| St. Clair | 1959 | 214, 753 | SMDs, referendum | none |
| St. Clair | 1969 | 1224, 2296 | ALR | none |
| St. Clair | 1971 | 56, 4263 | ALR | governor |
| St. Clair | 1973 | 395, 579 | ALR | governor |
| Sumter | 1919 | 160, 51 | AL staggered | governor |
| Sumter | 1947 | 261, 187 | ALR | governor appoints from town nominees |
| Sumter | 1985 | 85-488, 482 | SMDs | none |
| Talladega | 1880 | 129, 166 | ALR | none |
| Talladega | 1895 | 298, 524 | SMDs | none |
| Talladega | 1919 | 398, 167 | SMDs | none |
| Talladega | 1951 | 544, 955 | ALR | none |
| Talladega | 1953 | 544, 955 | SMDs | none |
| Tallapoosa | 1874 | 185, 263 | ALR | none |
| Tallapoosa | 1876 | 141, 154 | ALR | none |
| Tallapoosa | 1890 | 25, 35 | ALR | none |
| Tallapoosa | 1923 | 241, 144 | SMDs primary AL general | none |
| Tallapoosa | 1963 | 43, 211 | SMDs | none |
| Tuscaloosa | 1915 | 729, 470 | AL | governor |
| Tuscaloosa | 1985 | 85-106, 135 | SMDs | as prescribed by law |
| Walker | 1874 | 185, 263 | ALR | none |
| Walker | 1876 | 141, 154 | ALR | none |
| Walker | 1907 | 695, ? | ALR | none |
| Walker | 1927 | 616, 394 | AL staggered | none |
| Walker | 1931 | 262, 120 | AL numbered places | none |
| Walker | 1935 | 232, 131 | SMDs primary AL general | none |
| Walker | 1957 | 118, 166 | ALR | governor |
| Walker | 1966 | 410, 555 | ALR | none |
| Walker | 1973 | 1067, 1802 | ALR | none |
| Walker | 1975 | 911, 1811 | SMDs primary AL general | none |
| Washington | 1879 | 187, 219 | ALR | none |
| Washington | 1892 | 105, 219 | SMDs | none |
| Washington | 1894 | 90, 146 | ALR | none |
| Washington | 1915 | 560, 401 | SMDs | none |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;**
**SMD = single-member district; MMD = multi-member district**

**Table of Alabama local acts regarding selection of county commissioners since 1866**

| County | Year enacted | Local Act No., page | Method of Election | Vacancy Provision |
|--------|------|------|------|------|
| Washington | 1931 | 216, 80 | SMDs | none |
| Washington | 1935 | 153, 70 | ALR | none |
| Washington | 1943 | 174, 93 | SMDs | none |
| Washington | 1951 | 463, 823 | ALR, referendum | none |
| Washington | 1969 | 354, 727 | ALR | none |
| Washington | 1975 | 1163, 2287 | ALR | none |
| Washington | 1983 | 83-538, 839 | SMDs | none |
| Washington | 1992 | 92-226, 554 | SMDs | none |
| Wilcox | 1876 | 148, 157 | all appointed by governor | none |
| Wilcox | 1899 | 205, 434 | AL | none |
| Wilcox | 1939 | 436, 261 | ALR | commission |
| Wilcox | 1985 | 85-523, 631 | SMDs | none |
| Wilcox | 1989 | 89-290, 469 | SMDs | none |
| Winston | 1866 | 358, 517 | SMDs | none |
| Winston | 1895 | 544, 1136 | ALR | none |
| Winston | 1931 | 642, 298 | all appointed by governor | governor |
| Winston | 1939 | 333, 221 | all appointed by governor | governor |
| Winston | 1955 | 84, 327 | SMDs | governor |
| Winston | 1957 | 112, 152 | ALR | governor |
| Winston | 1959 | 326, 902 | SMDs | governor |
| Winston | 1965 | 277, 390 | ALR | commission |
| Winston | 1994 | 94-206, 266 | SMDs | as prescribed by law |

**Key to Method of Election: AL = at large; ALR = At large with residency districts;
SMD = single-member district; MMD = multi-member district**