IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FRED L. PLUMP, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) No. 2:07-cv-01014-MEF-CSC |
| | ) |
| BOB RILEY, Governor, | ) |
| | ) |
|    Defendant. | ) |

**MOTION FOR STAY PENDING APPEAL**

The Honorable Bob Riley, Governor of the State of Alabama, defendant in this action, respectfully requests that this Court stay—pending his appeal—its Amended Judgment in this case, specifically insofar as said judgment would self-execute later this month to effectuate the ouster of Governor Riley's appointee to the Jefferson County Commission, the Honorable George F. Bowman. In support of this motion, Governor Riley states as follows:

1. On January 22, 2008, this Court entered its Memorandum Opinion, doc. 28, and Judgment, doc. 29, in this case. Three days later, this Court entered an Order, doc. 32, and Amended Judgment, doc. 33. In short, the Court concluded that preclearance was required before Governor Riley could make an appointment to fill a vacancy on the Jefferson County Commission, and accordingly, that his appointment of Commissioner Bowman was in violation of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. The Court gave Governor Riley until February 5, 2008, to notify it of whether he would seek an immediate appeal (potentially to be consolidated with *Riley v.*

1

*Kennedy*, Case No. 07-77, United States Supreme Court, pending) or seek preclearance.

2. On February 5, 2008, Governor Riley noted that he did not consider the Court's judgment to be appealable yet, doc. 34 at 2, and he notified the Court of his intent to seek preclearance, doc. 34 at 1. Governor Riley had previously expressed that it "would be problematic" to attempt to consolidate any appeal in this litigation with the appeal in the *Kennedy* litigation, as merits briefing was already well underway in *Kennedy*. Doc. 31 at 4-5.

3. On March 18, 2008, the State of Alabama sought preclearance of the "change from special election to gubernatorial appointment in Jefferson County . . . required by two decisions of the Alabama Supreme Court, namely *Stokes v. Noonan*, 534 So.2d 237 (Ala. 1988), . . . and *Riley v. Kennedy*, 928 So.2d 1013 (Ala. 2005) . . . ."[1] Doc. 38-2 at 1. That submission, which requested expedited review and preclearance, took into account a number of events and filings that post-dated this Court's Amended Judgment. The submission was filed with the Court. Doc. 38.

4. "To prevent a jurisdictional cloud from forming over the present litigation . . . and to secure the fundamental right to appellate review," Governor Riley filed a notice of appeal in this case on March 22, 2008. Doc. 39.

5. While Governor Riley has expressed concerns over the present finality of this Court's Amended Judgment, this Court has made clear that it believes the Amended Judgment to be final and appealable. Doc. 33.

---

[1] The preclearance submission is dated March 18, 2008, and was entrusted to FedEx that day for delivery the next day. FedEx failed to timely deliver the submission; the submission was delivered on March 20, 2008.

6. Absent a stay pending Governor Riley's appeal (or expedited preclearance, which has also been sought), the Governor's appointment of Commissioner Bowman to the Jefferson County Commission will be vacated on April 21, 2008, pursuant to this Court's Amended Judgment.

7. The United States Supreme Court has explained that "the factors regulating the issuance of a stay are generally . . . : (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted). *See also Kennedy v. Riley*, Civil Action No. 2:05cv1100-MHT, _____ F. Supp. 2d _____, 2007 WL 1461746 at * 1 (May 17, 2007) (applying the *Hilton* factors to Governor Riley's stay request in similar litigation).

8. Before turning to the *Hilton* factors, it is important to consider relevant events that post-date this Court's Amended Judgment and that impact the overall stay analysis.

9. First, when this Court entered its Amended Judgment, the *Kennedy* litigation was in the merits-briefing stage in the United States Supreme Court. Governor Riley had filed his opening merits brief, *see* doc. 24-2 [2], and amicus briefs had been filed in support of his position. Now, the merits briefing has been completed. *See* Reply Brief for Appellant, filed on March 11, 2008 , in

---

[2] This brief is also available as Exhibit E to the preclearance submission. *See* doc. 38-2 at 42.

*Riley v. Kennedy*, Case No. 07-77, United States Supreme Court, pending, available in the record at doc. 38-3 at 69 (Exhibit O to the preclearance submission).[3]  On March 24, 2008, the Supreme Court heard oral argument.[4] The Supreme Court is expected to rule on the *Kennedy* litigation by the end of June, and its ruling in that case may resolve this litigation as well. Accordingly, it is possible that the United States Supreme Court will speak with finality on important issues in this case within 70 days after this Court's presently scheduled ouster of Governor Riley's appointee, Commissioner Bowman.

10. Second, after this Court entered its Amended Judgment, litigation was filed in State court concerning how the vacancy on the Jefferson County Commission created by Larry Langford's resignation should be filled. As explained in the State's preclearance submission, the Alabama Supreme Court granted an emergency motion preventing the results from the February 5, 2008, special election from being canvassed until further order of that court. (Doc. 38-2 at 15; *see also* doc. 38-3 at 114 (Exhibit V)).[5] Following expedited proceedings

---

[3]  To access all of the briefs in *Kennedy* appeal, the United States Supreme Court website directs one to: http://www.abanet.org/publiced/preview/briefs/march08.shtml.

[4]  The oral argument transcript can be found on the Supreme Court's website at: http://www.supremecourtus.gov/oral_arguments/argument_transcripts/07-77.pdf.

[5]  This litigation differs from the *Kennedy* litigation in this respect. Whereas, in *Kennedy*, the relevant election official was mindful of the Governor's appointment and the on-going litigation, the relevant election officials in Jefferson County moved forward with their plans for a special election, ignoring the fact that Governor Riley filled the relevant vacancy by appointing Commissioner Bowman. *See* doc. 38-3 at 107-13 (Resolution of the Jefferson County Election Commission calling for a special election; Exhibit U to the preclearance submission). *See also* doc. 38-3 at 115-16 (Birmingham councilman Bill wins JeffCo Commission seat, *The Birmingham News*; Exhibit W to preclearance submission); doc. 38-3 at 117-29 (collected news articles on the special election candidates; Exhibit X to the preclearance submission). As a result,

in the trial court, the Jefferson County Circuit Court (Vowell, J.) ruled that the private plaintiffs lacked standing to prosecute their cause.[6] *See* Exhibit Y to the Preclearance Submission, doc. 38-3 at 130, 134-138. Judge Vowell went on to consider the merits of the case, however, and held that the vacancy should be filled by special election, not gubernatorial appointment. *Id.* at 138-42. By its own terms, the Alabama Supreme Court's injunction remains in place at this time, and the election results have not been canvassed. Governor Riley is among those who have appealed the Circuit Court's ruling.

11. Third, unless a stay is entered, there will be a vacant seat on the Jefferson County Commission while this appeal is pending. Unless this Court's Amended Order is stayed, Commissioner Bowman will be ousted from office later this month, and, because of the stay entered by the Alabama Supreme Court, there will be no one to take Commissioner Bowman's place on the Jefferson County Commission pending that appeal.

12. Turning to the individual stay factors, the first is "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Hilton*, 481 U.S. at 776. This is admittedly a difficult task as there has not yet been an intervening change in the law and the relevant legal issue is novel. Governor Riley has already briefed the Court—and, fairly thoroughly for the preliminary injunction stage—on his arguments as to why preclearance should

---

Governor Riley's appointment could not be said to have itself deprived anyone of the right to vote, and, instead, Jefferson County at one point faced the prospect of having two individuals claiming title to the same public office.

[6] The Circuit Court did not consider Governor Riley's standing, though he had intervened as a plaintiff.

not be required, both in writing, doc. 18, and at the January 15, 2008 oral argument. Governor Riley has also filed, and incorporated the arguments in, his United States Supreme Court merits brief. (doc. 24). Without belaboring the legal arguments already made, Governor Riley would add the following points:

a. Amicus briefs in support of the Governor's position were filed in the United States Supreme Court by: (1) the States of Florida, South Carolina, Alaska, Louisiana, New Hampshire, New Mexico, South Dakota, and Virginia; (2) Abigail Thernstrom and Stephan Thernstrom[7]; (3) The Project on Fair Representation[8]; and, (4) former State Court Justices Charles Fried and Thomas R. Phillips[9].

---

[7] "Abigail Thernstrom is a Senior Fellow at the Manhattan Institute in New York and Vice Chair of the United States Commission on Civil Rights. Recently, she served as a witness in the hearings before the Senate Judiciary Committee regarding the 2006 reauthorization of the Voting Rights Act. Stephan Thernstrom is the Winthrop Professor of History at Harvard University, a Senior Fellow at the Manhattan Institute, and a member of the National Council for the Humanities. He has served as an expert witness in more than two dozen federal cases involving claims of racial discrimination." Brief for Abigail Thernstrom and Stephan Thernstrom as Amici Curiae Supporting Appellant at 1, filed on January 22, 2008, in *Riley v. Kennedy*, Case No. 07-77, United States Supreme Court, pending.

[8] The amicus brief of The Project on Fair Representation argued that Section 5 is unconstitutional. Brief *Amicus Curiae* of The Project on Fair Representation in Support of Appellant, filed on January 22, 2008, in *Riley v. Kennedy*, Case No. 07-77, United States Supreme Court, pending.

[9] "*Amicus* the Honorable Charles Fried served as an Associate Justice of the Supreme Judicial Court of Massachusetts from 1995 to 1999. He also served as the Solicitor General of the United States from 1985 to 1989. He is currently the Beneficial Professor of Law at Harvard Law School, where he teaches Constitutional Law." Brief *Amici Curiae* of Former State Court Justices Charles Fried and Thomas R. Phillips in Support of Appellant at 1-2 (footnote omitted), filed on January 22, 2008, in *Riley v. Kennedy*, Case No. 07-77, United States Supreme Court, pending. "*Amicus* the Honorable Thomas R. Phillips served as the Chief Justice of the Supreme Court of Texas from 1988 to 2004." *Id.* at 2. "Chief Justice Phillips has had first hand experience with the federalism issues presented in this case." *Id.*

    b. "Chief Justice Phillips has had first hand experience with the federalism issues presented in [*Kennedy*].  During his tenure as Chief Justice, a three-judge federal district court held that the Texas Supreme Court's construction of a state election law in *State ex rel Angelini v. Hardberger*, 932 S.W.2d 489 (Tex. 1996), was subject to pre-clearance under Section 5 of the Voting Rights Act before that state law, as authoritatively construed by the Texas Supreme Court, could be enforced.  *See LULAC of Texas v. Texas*, 995 F. Supp. 719 (W.D. Tex. 1998)."  Brief *Amici Curiae* of Former State Court Justices Charles Fried and Thomas R. Phillips in Support of Appellant at 2, filed on January 22, 2008, in *Riley v. Kennedy*, Case No. 07-77, United States Supreme Court, pending.  At the time, Texas' Secretary of State, Alberto R. Gonzales, adamantly disagreed with the *LULAC* court's decision that preclearance was required, invoking some of the same arguments that Governor Riley invokes today. (doc. 38-3 at 1-10, Exhibit K to preclearance submission).

    c. Naturally amicus briefs were also filed in support of the Kennedy plaintiffs.  The NAACP Legal Defense & Educational Fund, Inc. filed a brief, as did the American Civil Liberties Union and ACLU of Alabama.  The Lawyers Committee for Civil Rights Under Law filed a brief, dedicated to arguing that the appeal was moot because the United States Supreme Court lacked the power to provide any relief to Governor Riley.  The United States filed a brief agreeing with Governor Riley on the

---

    The Fried/Phillips amicus brief was included in the preclearance submission, which was also filed with this Court.  It can be found as Exhibit L to submission, beginning at doc. 38-3 at 11.

7

jurisdictional issue and with the Kennedy plaintiffs on the merits. No academics or voting rights scholars filed a brief on behalf of the Kennedy plaintiffs, excluding their own counsel.

d. While one can never be certain—and Governor Riley would not presume to know—how the Court will rule, oral argument in the *Kennedy* litigation suggests that several of the Justices were receptive to the arguments made by Governor Riley. The following exchange is worthy of highlighting:

> JUSTICE ALITO: Well, you're saying that if a State passes a statute -- a State legislature passes a statute that's flagrantly in violation of the State constitution, it immediately is precleared, it's locked into place?
>
> MS. KARLAN [counsel for the plaintiffs]: Yes, I am.
>
> JUSTICE SCALIA: That rule of law renders constitutional under State law an act that would otherwise not be constitutional.
>
> MS. KARLAN: No, it does not render it constitutional.
>
> JUSTICE SCALIA: Well, that's what you're saying.
>
> MS. KARLAN: No.
>
> JUSTICE SCALIA: You're saying that the effect: It locks it in.
>
> MS. KARLAN: It locks it in until the State comes up with a constitutional cure, in the same way –
>
> JUSTICE SCALIA: Oh, but it can't go back.
>
> MS. KARLAN: No, it cannot go back.
>
> JUSTICE SOUTER: It locks it in.
>
> . . .
>
> JUSTICE SOUTER: May I ask: You're not -- correct me if I'm wrong. I didn't think you were arguing that because of the

>preclearance followed by the State determination of unconstitutionality, that the State was required to follow that unconstitut[al] law.
>
>I thought your argument was simply that, in effect, there was a stalemate at that point, and the State was going to have to come up with some new law that would be precleared. Am I correct?
>
>. . .
>
>JUSTICE SOUTER: Does the theory require that we assume it remains in force and effect by virtue of the preclearance even when there is a subsequent determination of unconstitutionality?
>
>MS. KARLAN: I think the answer to that question, candidly, is yes . . . .

http://www.supremecourtus.gov/oral_arguments/argument_transcripts/07-77.pdf at 32-34. Chief Justice Roberts expressed a different concern. Dismissing the decisions relied upon by Plaintiff's counsel as dicta, the Chief Justice suggested that because the practice of gubernatorial appointment was in effect on Alabama's coverage date, there was no "change" in voting practice according to the plain text of Section 5.[10] *See id.* at 22-24, 43-47, 54-55.

>CHIEF JUSTICE ROBERTS: Why did Alabama have to preclear anything? On November 1st, 1964, this was an appointed position. This is not a change from what was, quote, "in force or effect" on November 1st, 1964.

---

[10] In pertinent part, Section 5 provides: "Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting *different from that in force or effect on November 1, 1964* . . . ." 42 U.S.C. § 1973c (emphasis added). In *Kennedy*, as in *Plump*, gubernatorial appointment is the practice that was in effect in Alabama on November 1, 1964. *See* doc. 18 at 2 & n.2-3; doc. 38-2 at 2.

9

>MS. KARLAN: Well, for one thing, this court would have to overrule its decisions –
>
>CHIEF JUSTICE ROBERTS: Oh, no, no. Those decisions are all dicta.

*See id.* at 43-44. Justice Scalia went so far as to suggest that the position advocated by the Plaintiff and the United States was inconsistent with the Constitution's guarantee of a republican form of government. *Id.* at 48 ("As I understand what's going on here, the -- the legislative process of the people of Alabama, whereby something is invalid as a law, suddenly becomes a law because the Federal attorney general has given it preclearance. The people have never voted for that properly under their Constitution. Yet, it becomes law in Alabama. And that's a republican form of government?").[11]  Whatever the Supreme Court's probing inquiries might mean for the future of the *Kennedy* litigation, it is clear that an affirmance of this Court's decision in *Kennedy* is not a foregone conclusion. And because of the similarities of the arguments presented in both cases, if this Court's decision in *Kennedy* is reversed, this case will likely be reversed and remanded for reconsideration in the light of the Supreme Court's decision in *Kennedy*.

---

[11] Article IV, Section 4 of the United States Constitution provides, in pertinent part, that "The United States shall guarantee to every State in this Union a Republican Form of Government . . . ." *See also Duncan v. McCall*, 139 U.S. 449, 461 (1891) ("By the constitution, a republican form of government is guaranteed to every state in the Union, and the distinguishing feature of that form is the right of the people to choose their own officers for governmental administration, and pass their own laws in virtue of the legislative power reposed in representative bodies, whose legitimate acts may be said to be those of the people themselves; but, while the people are thus the source of political power, their governments, national and state, have been limited by written constitutions, and they have themselves thereby set bounds to their own power, as against the sudden impulses of mere majorities.").

    e. The Federalism costs associated with a federal court's ousting the Governor's appointee are extraordinary. Those costs are exacerbated here by the lack of finality under State law, since, as a practical matter, on-going State court litigation could moot this federal litigation while the present appeal is pending. If the Alabama Supreme Court rejects Governor Riley's position in the state appeal, that court's decision would most likely moot the appeal in this case by effecting, as a matter of State law, the same result achieved by the Amended Order, but without the affront to federalism. Moreover, the United States Supreme Court is expected to speak with finality on the very issues which control this case on or before June 30th. Thus, within 70 days after this Court's presently scheduled ouster of Governor Riley's appointee, action by either the Alabama Supreme Court or the United States Supreme Court could determine the validity of Governor Riley's appointment. These extraordinary circumstances weigh in favor of granting the stay pending appeal.

13. The second stay factor is "whether the applicant will be irreparably injured absent a stay." *Hilton*, 481 U.S. at 776. The relevant harm here is to Governor Riley and to the people of Alabama whom he represents. Governor Riley and the people of Alabama would suffer the blow of having the Governor's appointment vacated by a federal court, while the State-law validity of the appointment is under review by the Alabama Supreme Court. Under the legal theories set forth by Governor Riley in this case, a State's

    practice cannot be said to be "in effect" if it is unlawful as a matter of State law, and any change must be measured from the baseline established with reference to a lawful and precleared practice. Now that a State challenge has been brought, it is appropriate to let the Alabama Supreme Court first determine whether the appointment is valid under State law. The blow to Governor Riley is further sharpened, since as previously argued, this Court issued permanent relief after conducting a hearing on the Plaintiff's motion for *preliminary* injunction. *See* doc. 31 at 2-3. This fact, when combined with the pending litigation in both the United States Supreme Court and the Alabama Supreme Court, makes it appear that the imminent ouster of Governor Riley's appointee is being effected with undue haste.

14. The third stay factor is "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Hilton*, 481 U.S. at 776. It is not at all apparent that any legitimate interests of the Plaintiff would be harmed by a slight delay that allows time for the United States Supreme Court and the Alabama Supreme Court to act.

    a. Again, the United States Supreme Court could issue a decision in *Kennedy* any day, and will do so within 70 days of this Court's currently scheduled ouster of Commissioner Bowman. That decision could finally resolve the issues in this litigation, and could do so in a manner that would permit Commissioner Bowman to remain in office under Section 5. Permitting Commissioner Bowman to remain in office in the interim would work no hardship on anyone.

b. Moreover, the Alabama Supreme Court has before it the question of whether the vacancy created by Larry Langford's resignation should be filled by gubernatorial appointment or special election. If the Alabama Supreme Court rules the former, this appeal continues; if it rules the latter, however, that court's ruling would very likely effect the same result as this Court's Amended Order and moot this appeal, without the substantial federalism costs associated with ouster by this Court.

c. Finally, as noted earlier, the Alabama Supreme Court has enjoined the Jefferson County Election Commission from canvassing the ballots cast during the February 5 special election, pending further order of that Court, doc. 38-3 at 114; Exhibit V to the preclearance submission. That action—not the Governor's appointment of Commissioner Bowman—is what stopped the election.[12] Accordingly, the Governor's appointment has not interfered with the special election or preventing anyone from casting a vote; the sole consequence of the appointment is that the seat once occupied by Larry Langford is now occupied by Commissioner Bowman, instead of being vacant. Only the Alabama Supreme Court may determine the validity of the special election as a matter of State law. If this Court's Amended Order is not stayed pending appeal, it will confer a harm on the Governor and the State, without conferring any benefit to the Plaintiff or anyone else. Because there will be no harm to anyone if this Court stays its order pending appeal, the third factor weighs in favor of a stay.

---

[12]   The Jefferson County Election Commission had pressed on with the special election in spite of the Governor's appointment. *See* n. 5, *supra*.

15. The fourth stay factor is "where the public interest lies." *Hilton*, 481 U.S. at 776. The public interest lies in having a commissioner serving the public in Jefferson County.

   a. Jefferson County is governed by five commissioners. *See* doc. 38-3 at 162. According to the Jefferson County Commission's website, "The major responsibilities of the Commission are: [to a]dminister the County's finances[; to s]erve as custodians of all of the County's property[; to c]ollect taxes as set by [S]tate law[; to a]llocate resources for the construction of buildings, roads and other public facilities[; to p]rovide for the delivery of services that by law are the County's responsibility (such as sewer service and law enforcement) [; and to m]ake appointments to various governmental boards and agencies." *Id.*

   b. Jefferson County is in a fiscal crisis, *see e.g.*, Bonds at Base Junk Rating, *The Birmingham News*, available at http://www.al.com/news/birmingham news/index.ssf?/base/news/1207124135281870.xml&coll=2 ("County officials have said they expect the two-week forbearance agreement to be extended while the two sides explore a way to avoid what would be the largest municipal bankruptcy in the country's history."). Ousting Commissioner Bowman would do nothing to seat any replacement—given the Alabama Supreme Court's injunction, doc. 38-3 at 114; Exhibit V to the preclearance submission—it would only leave Jefferson County with one fewer Commissioner working to resolve the crisis.

14

      c. Separate from the looming fiscal crisis, Commissioner Bowman is Commissioner of Health and Human Services, doc. 38-3 at 163, 169, and ousting him from that position would presumably leave the remaining commissioners responsible for performing those important functions as well. Again, according to the Commission's website, Commissioner Bowman "oversees the Department of Health and Human Services" which includes the Office of Senior Citizens Services, the County Home, the Coroner, and the Central Laundry, doc. 38-3 at 169.

16. For these reasons, Governor Riley respectfully asks this Court to stay—pending his appeal—its Amended Judgment in this case, specifically insofar as said judgment would self-execute later this month to effectuate the ouster of Governor Riley's appointee to the Jefferson County Commission, the Honorable George F. Bowman.

|  |  |
|---|---|
|  | **Respectfully submitted,** |
| **Of counsel**: | **Troy King (KIN047)**<br>**Attorney General** |
| Kenneth D. Wallis, II (WAL064)<br>Chief Legal Advisor<br>Office of the Governor | s/ Margaret L. Fleming<br>Margaret L. Fleming (FLE001)<br>James W. Davis (DAV103) |
| Scott L. Rouse (ROU010)<br>Deputy Legal Advisor<br>Office of the Governor | Misty S. Fairbanks (FAI005)<br>Assistant Attorneys General |
| ADDRESS OF COUNSEL:<br>Office of the Governor<br>State Capitol, Suite NB-05<br>600 Dexter Avenue<br>Montgomery, Alabama  36130<br>(334) 242-7120 Phone<br>(334) 242-2335 Fax | OFFICE OF THE ATTORNEY GENERAL<br>STATE OF ALABAMA<br>11 South Union Street<br>Montgomery, Alabama 36130<br>Telephone: (334) 242-7300<br>Facsimile:  (334) 353-8440<br>mfleming@ago.state.al.us<br>jimdavis@ago.state.al.us<br>mfairbanks@ago.state.al.us |
| ken.wallis@governor.state.al.us<br>scott.rouse@governor.alabama.gov | **Counsel for Governor Riley** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of April, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:  Edward Still (docket@votelaw.com), and James U. Blacksher (jblacksher@ns.sympatico.ca).

s/ Margaret L. Fleming (FLE001)