IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| FRED L. PLUMP, <br><br> Plaintiff, <br><br> v. <br><br> HONORABLE BOB RILEY, as Governor of the State of Alabama, <br><br> Defendant. | CIVIL ACTION NO. 2:07-cv-01014-MEF-CSC |

# Plaintiff's Brief in Opposition to the Motion for Stay Pending Appeal (Doc. 42)

Before giving a detailed response based on the standards for a stay pending appeal found in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), plaintiff presents the following summary of reasons the Court should not grant the current motion to stay pending appeal. These reasons are even more compelling than the reasons for the Court's denial of a similar motion in *Kennedy v. Riley,* Civil Action No. 2:05cv1100-MHT.

1. In *Kennedy*, Governor Riley could claim he was merely implementing a state court judgment; in *Plump*, the Governor is claiming he should be able to ignore a state court judgment.

2. The U.S. Supreme Court's upcoming decision in *Kennedy* (assuming the Court does not dismiss the appeal for failure to appeal on time) will not control the appeal in *Plump*, because:

a. Governor Riley cannot claim here, as he did in *Kennedy*, that the state constitution requires him to appoint someone to fill the Jefferson County vacancy.

b. As Jefferson County Circuit Judge Vowell's ruling shows, Governor Riley was acting on his own assumed authority when he filled the Jefferson County vacancy by appointment, not on the authority of a state court judgment. This important difference will remain even if he wins a reversal in the Alabama Supreme Court.

c. Governor Riley has unilaterally claimed authority to ignore the Alabama Legislature's unambiguous statutory intent to keep the Jefferson County local act in full force and effect. The Jefferson County local act has never been declared unconstitutional and did not have to be "revived" like the Mobile County local act did.

d. In Jefferson County, the practice in force and effect prior to 1964 was gubernatorial appointment only until the next general election, at which a new commissioner was to be chosen by special election.

3. Governor Riley's motion stands federalism on its head by asking this court effectively to overrule the state court decision holding Governor Riley has no appointive authority.

4. Governor Riley's motion stands Section 5 of the Voting Rights Act on its head by shifting the burden of time and inertia to black voters and to local election officials in Jefferson County.

5. Governor Riley's motion stands Section 5 on its head by allowing him to extend implementation of a voting change that cannot be precleared, because it was not authorized by state law.

6. To establish a substantial likelihood of success, Governor Riley must overcome both federal court and state court judgments.

I.        **Defendant has not shown a likelihood of success on appeal.**

The defendant claims that the upcoming U.S. Supreme Court "ruling in [*Riley v. Kennedy*] may resolve this litigation as well. To the contrary, there are important factual differences in the two cases.

First, the Jefferson County Circuit Court in *Working v. Jefferson County Election Commission* has held that state law does not allow the Governor to appoint a commissioner to a vacancy on the Jefferson County Commission. See *Working* Judgment at 9-13 (attached as Exhibit A).

Second, while the *Kennedy* plaintiffs had to deal with two Alabama Supreme Court rulings holding that the local laws purporting to call for special elections to fill county commission vacancies, there have been no state court decisions invalidating the local law affecting Jefferson County. To the contrary, there is a state circuit court decision upholding the law. See *Working* Judgment.

3

Third, Ala. Code § 11-3-1(b) and (f), as amended by Act 2007-488, explicitly allows existing local laws governing the filling of county commission vacancies to remain in force and effect. Ala. Code § 11-3-1(b) (replacing § 11-3-6, which has been repealed) begins with virtually the same phraseology that *Riley v. Kennedy* held can only be applied prospectively: "Unless a local law authorizes a special election, any vacancy on the county commission shall be filled by appointment by the Governor." But Ala. Code § 11-3-1(f), added in 2007, provides:

> *Except as specifically provided in subsections (b) and (c), this section applies in all counties and may not be altered or amended by* local *law.* Any existing local law or portion thereof in conflict with this section is specifically repealed to the extent of the conflict effective with the next election following September 1, 2007. *It is the intent of the foregoing that* a portion of a local law in direct conflict with this section shall be repealed, and *any remaining portions of the local law not in conflict shall remain in full force and effect.*

(Emphasis added.) Thus, by specifying that local laws authorized by subsection (b) calling for vacancies on county commissions to be filled by special election "shall remain in full force and effect," the Legislature has provided the clear expression of retroactive effect called for by *Riley v. Kennedy*.[1] Thus Act 77-784 has never been repealed, so it remains in full force and effect, and the vacancy on the Jefferson County Commission created by Larry Langford's resignation must be filled by special election.

---

[1] The State has submitted Act 2007-488 for preclearance, but has told the U.S. Attorney General that the new subsection (f) to § 11-3-1 makes no substantive change in existing practice. Submission No. 2008-0427. We agree as to Jefferson County.

4

Fourth, the practice in force and effect prior to 1964 in Jefferson County was gubernatorial appointment only until the next general election, at which a new commissioner was to be chosen by special election.  See Act 1957-429 (attached as Exhibit B); see also Doc. 21-2 (Table of Local Acts).

**II.     The defendant has shown no irreparable injury to himself, nor an absence of injury to the plaintiff and the public.**

Under *Hilton v. Braunskill,* the applicant for a stay must show he "will be irreparably injured absent a stay."  481 U.S. at 776.  Governor Riley states, "The relevant harm here is to Governor Riley and to the people of Alabama whom he represents."  The only interest the Governor has in this is the preservation of his patronage power to make an appointment.

The residents and voters of Jefferson County District 1 are the ones who are harmed, not all "the people of Alabama."  District 1 voters have spoken through an election, rejecting decisively the Governor's appointee and choosing William Bell.

Governor Riley asserts that the people of Jefferson County will be harmed by any vacancy on the Jefferson County Commission.  Governor Riley can mitigate that harm by asking the Alabama Supreme Court to vacate its interim injunction against the certification of the results of the special election.

**III.      This Court has already allowed Governor Riley to violate Section 5 for 90 days; it should not extend that violation.**

The purpose of § 5 of the Voting Rights Act was "to shift the advantage of time and inertia from the perpetrators of the evil to its victims," *South Carolina v Katzenbach*, 383 US 301, 328 (1966). Congress drafted § 5 to centralize consideration of the substantive preclearance issues in two fora: the District Court for the District of Columbia and the U.S. Attorney General. To reverse the time-consuming, expensive, and legally burdensome case-by-case method of challenging proliferating changes in voting practices case by case, Congress also placed all the burdens of proof and delay on the covered jurisdictions.

Even though the plaintiff argued for immediate vacation of the appointment of Commissioner Bowman, the Court granted Governor 90 days to obtain preclearance. Governor was dilatory: he took 56 days to file his request for preclearance. If this case were so much like *Kennedy*, as the Governor argues, why did it take so long to prepare the preclearance request?

Unless the Governor files his Jurisdictional Statement within the next week, the U.S. Supreme Court will not have the time to consider the appeal before its summer recess.[2] Thus the stay sought by the Governor will extend to October at the earliest.

---

[2] The undersigned counsel has been told by Chris Vasil, Chief Deputy Clerk of the Supreme Court, that an appellee's or respondent's papers to an appeal or certiorari petition must be filed with the Court no later than 23 May to have any chance of being considered by the Court before the summer recess.

Submitted by,

/s/ James U. Blacksher                        /s/ Edward Still
James U. Blacksher                            Edward Still
P.O. Box 636                                  Edward Still Law Firm LLC
Birmingham AL 35201                           2112 11th Avenue South
      phone 205-591-7238            Suite 201
      fax 205-591-0709              Birmingham AL 35205-2844
      email                               phone: 205-320-2882
jblacksher@ns.sympatico.ca                          fax: 877-264-5513
                                                    email: Still@votelaw.com

                                              Attorneys for the plaintiff

## CERTIFICATE OF SERVICE

I certify that on 12 April 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Margaret L. Fleming, Esq.              Kenneth D. Wallis, II, Esq.
James W. Davis, Esq.                   Chief Legal Advisor
Assistant Attorneys General            Scott L. Rouse, Esq.
11 South Union Street                  Deputy Legal Advisor
Montgomery, AL 36130-0152              Office of the Governor
Email: mfleming@ago.state.al.us        State Capitol, Suite NB-05
Email: jimdavis@ago.state.al.us        600 Dexter Avenue
                                       Montgomery AL 36130
                                       ken.wallis@governor.state.al.us
                                       scott.rouse@governor.alabama.gov

                                       /s/ Edward Still

# Exhibit A



ELECTRONICALLY FILED
3/18/2008 9:50 AM
CV-2008-900316.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## CIVIL DIVISION

| | |
|---|---|
| **PATRICIA WORKING, RICK ERDEMIR and FLOYD McGINNIS,** | ) ) ) |
| **PLAINTIFFS,** | ) |
| **v.** | ) |
| **JEFFERSON COUNTY ELECTION COMMISSION, et al.,** | ) ) |
| **DEFENDANTS.** | ) ) |

**CIVIL ACTION NO.
CV   08-900316 JSV**

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### and
### FINAL JUDGMENT

This case is before the court on an order of remand from the Supreme Court of Alabama issued on February 20, 2008.  That Order kept in effect an injunction in which the Supreme Court enjoined the Jefferson County Election Commission from certifying the results of the February 5, 2008 election for District One of the Jefferson County Commission.  That Court stated, "it further appearing to the Court that any potential statutory jurisdictional requirements have been met; it is ordered that this case is remanded to the trial court for a ruling on the merits."

In response to that mandate, this court issued a Scheduling Order on February 21, 2008, setting the case for arguments and submissions on March 14, 2008.  Through the cooperation of counsel for all parties in the case, the material facts are before the court by stipulation.  A copy of the stipulated facts is attached hereto.

1

On November 13, 2007, Larry Langford, resigned his position on the Jefferson County Commission, District Number One, after being elected mayor of the City of Birmingham. This dispute is about how Mr. Langford's replacement on the Jefferson County Commission will be selected.

The important legal issue to be addressed in this case sounds simple: should a vacancy on the Jefferson County Commission be filled through an appointment by the Governor of Alabama or by a vote of the people who live in the District? One would think that the law would provide a ready and clear answer to such a fundamental question. Unfortunately, that is not the case. In seeking the correct answers to the issues presented, the courts are bound by the Alabama Constitution of 1901, the statutes enacted by the Alabama Legislature, and the appellate court decisions which have interpreted those provisions and laws. The wisdom of these laws is not an issue for the courts. The courts must address the law as it is and not as we wish it to be.

This case was commenced by the filing of a verified complaint on January 31, 2008. There were two plaintiffs, Patricia Working and Rick Erdemir, and they named as defendants the Jefferson County Election Commission and its individual members, Probate Judge Alan King, Sheriff Mike Hale and Circuit Clerk Anne-Marie Adams.

The complaint invoked this Court's jurisdiction under various sections of the Alabama Code and in their prayer for relief plaintiffs sought, among other things, a declaration that the Election Commission was not authorized to hold an election to fill the vacancy on the Jefferson County Commission on February 5, 2008. They alleged that Alabama Act Number 77-784 is unconstitutional because it violates Article IV, § 105, of the Alabama Constitution of 1901. They

2

further contend that the Act was misinterpreted by the Election Commission when it set the election for February 5, 2008. They asked the court to issue a temporary restraining order, enjoining the Election Commission from conducting the election or from canvassing or announcing the results of the election.

This court conducted an expedited hearing on the day after the complaint was filed and issued an order on February 1, 2008, concluding that unless the Attorney General and other interested parties were served or named as parties to the action, the court had no jurisdiction to grant the relief sought by the plaintiff, citing Ala. Code (1975) § 6-6-227. On February 4, 2008, the plaintiffs served notice of their action upon the Attorney General.

The election proceeded on February 5, 2008, along with the Presidential Preferential Primaries. On the same day, the plaintiffs filed a Petition for Writ of Mandamus in the Supreme Court of Alabama, asking that court to issue an emergency injunction barring the Election Commission from declaring the results of the election. Alabama's Attorney General filed an *amicus* brief in support of the plaintiffs' Petition.

On February 6, 2008, Fred L. Plump, one of the candidates for the District One seat on the Jefferson County Commission, filed a Motion to Intervene in this case and on February 12, 2008, the plaintiffs amended their complaint to add another plaintiff, Floyd McGinnis. The plaintiffs also added William Bell as a party defendant. Mr. Bell was also a candidate for the District One seat on the Commission and, according to unofficial tallies, he won a majority (56%) of the votes cast among the six candidates for the Commission seat.

3

Another candidate for the position was George F. Bowman, who was added to the case as a third-party defendant by Mr. Plump. General Bowman was appointed by Governor Riley to fill the vacancy on the Jefferson County Commission on November 21, 2007, and he continues in that office.

The third-party claim by Mr. Plump and Mr. Bell against General Bowman was brought under Ala. Code (1975) § 6-6-590 *et seq.* This statute is said to furnish "a remedy coextensive in scope with the common-law information in the nature of quo warranto." *State v. Birmingham Waterworks Co.*, 185 Ala. 388, 64 So. 23 (1913). In his prayer for relief under the *quo warranto* statute, Mr. Plump asks the court to rule that General Bowman unlawfully holds the Commission seat and seeks a declaration that Mr. Bell is the person entitled to hold the office. The Attorney General has filed an answer to the *quo warranto* proceeding on behalf of Governor Riley.

The court will refer to Patricia Working, Rick Ertemir, Floyd McGinnis, Governor Riley and George Bowman as plaintiffs since they are united in their challenge of the February 5, 2008 election. The court will refer to the Jefferson County Election Commission and its members, Judge Alan King, Circuit Clerk Anne-Marie Adams, Sheriff Mike Hale, along with Fred L. Plump and William Bell, as defendants since they are united in seeking to uphold the results of the election.

Despite the complicated procedural posture of the case, there are three legal issues which must be addressed by the court under the Supreme Court's mandate to address the merits of the various claims. Those questions are:

1. Do the named plaintiffs have standing to bring this action?

2. Is Alabama Act Number 77-784 constitutional?

3. If the Act is valid, did the Election Commission correctly schedule the February 5, 2008 special election.

The first question presented by the parties deals with the legal standing of the named plaintiffs to bring this action. The parties do not agree as to whether this issue was considered by the Supreme Court when it stated in the order of February 20, 2008, that any "potential statutory jurisdictional requirements have been met." The question of standing is jurisdictional. This court's initial ruling with regard to jurisdiction was based upon the plaintiffs' failure to serve notice of their constitutional challenge on the Attorney General and the failure to name certain other necessary parties. The issue of the plaintiffs' legal standing has not previously been addressed by this court.

**I.**
**PLAINTIFFS' LEGAL STANDING**

When the action was commenced Patricia Working and Rick Erdemir were the only named plaintiffs. They alleged under oath that they, "reside within the geographic boundaries of Jefferson County Commission District One." As it turns out, the allegation of residency was not true. (Joint Stipulation of Undisputed Fact, Numbers One and Two). Plaintiffs' counsel argues that the plaintiffs made a simple mistake and did not know that they lived in District Four, not District One. Be that as it may, the other plaintiff, Floyd McGinnis, was added by amendment while the case was before the Supreme Court, and he lives within the boundaries of District One.

Standing turns on whether the parties have been injured in fact and whether such injury is to a legally protected right. *State v. Property at 2018 Rainbow Drive*, 740 So.2d 1025, 1027 (Ala. 1999).

5

> "'A party establishes standing to bring a challenge on constitutional grounds when it demonstrates the existence of (1) an actual, concrete and particularized "injury in fact"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision."'"

*Town of Cedar Bluff v. Citizens Caring For Children*, 904 So. 2d 1253, 1256-57 (Ala. 2004),

In *Town of Cedar Bluff*, the plaintiffs contended that they had a "'universally accepted' and legally protected right to valid elections," and that they "suffer an injury when an invalid election is held as the result of an unconstitutional statute." The Alabama Supreme Court held that "this allegation, without more, is insufficient to establish an injury because [the plaintiffs] have failed to state with 'particularity' in what respect they were injured by the fact that the election was held- they have merely made the conclusory allegation that the election caused an injury because it was allegedly unconstitutional." 904 So. 2d at 1257.

Since neither Ms. Working nor Mr. Erdemir lives or votes in District One, they lack standing to challenge an election to elect a County Commissioner from District One. Because neither Ms. Working nor Mr. Erdemir is eligible to vote in District One elections, it is difficult to see how they have suffered a legal injury as a result of the February 5, 2008 election regardless of when the election is held.

Although Mr. McGinnis lives in District One and is a qualified elector, he still must establish his standing to bring an action challenging the constitutionality of Act No. 77-784. In this action, his complaint fails to establish that he is a "proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit." *Doremus*

6

*v. Business Council of Alabama Workers' Comp. Self-Insurers Fund*, 686 So. 2d 252, 253 (Ala. 1996).

The verified complaint alleges no injury suffered by McGinnis by the canvassing or certifying of the votes. In the Application for a T.R.O., McGinnis asserted that he would be injured because he has "the right to vote at any election scheduled for selecting the person to occupy the office of commissioner for District One of the Jefferson County Commission," and that "[t]he conduction of an election not authorized by law is a useless act and waste of public resources, and a proper subject of injunctive relief." This assertion of injury differs only in semantics from the allegation rejected by the Court in *Town of Cedar Bluff*. Thus, Mr. McGinnis has not stated or shown with particularity the injury in fact necessary to grant him standing to challenge the constitutionality of Act No. 77-784.

Specifically, the Alabama Supreme Court has held:

"When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction. *Barshop v. Medina County Underground Water Conservation District,* 925 S.W.2d 618, 626 (Tex. 1996) ('Standing is a necessary component of subject matter jurisdiction'). See also *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ('"standing 'is perhaps the most important of [the jurisdictional] doctrines'"'); *National Organization for Women, Inc., v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed. 2d 99 (1994) ('Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.'); *Romer v. Board of County Comm'rs of the County of Pueblo, supra,* 956 P.2d at 585 ('standing is a jurisdictional prerequisite to every case and may be raised at any stage of the proceedings') (Martinez, J., dissenting); *Cotton v. Steele,* 255 Neb. 892, 587 N.W.2d 693 (1999). But see *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 721 A.2d 43 (1998) (standing is not jurisdictional).

"Because '[t]he lack of standing [is] a jurisdictional defect,' the defect 'cannot be cured nunc pro tunc back to the date when the original complaint was filed.' *Tyler House Apartments, Ltd., v. United States,* 38 Fed. Cl. 1, 7(Fed. Cl. 1997). In other words, a pleading purporting to amend a complaint, which complaint was filed by a party without standing, cannot relate back to the filing of the original complaint, because there is nothing 'back' to which to relate. See *GAIA Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779 (Fed. Cir. 1996) (assignment to Gaia Technologies, Inc., of patent and trademark rights purporting to operate nunc pro tunc to a date 'prior to Gaia's filing of the ... suit' was ineffective to cure the jurisdictional defect created by Gaia's lack of standing on the date of commencement of the action), amended on rehearing on other grounds, 104 F.3d 1298 (Fed. Cir. 1996); *Reynolds v. United States*, 748 F.2d 291, 292 (5th Cir. 1984) (a complaint filed pursuant to the Federal Tort Claims Act ('FTC') before the 'final denial' of the plaintiff's claim by the 'appropriate Federal agency' as required by the FTC was due to be dismissed for lack of subject-matter jurisdiction, and an amended complaint filed after the 'final denial' was also due to be dismissed because it could relate back only to a date on which the trial court lacked subject-matter jurisdiction).

"Because the City had no standing to commence or prosecute this action, the complaint it filed on April 23, 1996, failed to invest the trial court with subject-matter jurisdiction. Therefore, the purported amendment filed on July 30, 1997, could relate back only to a time when the trial court had no jurisdiction. The trial court's order of December 30, 1997, dismissing this action was correct."

*State v. Property at 2018 Rainbow Drive*, supra at 1028 (Ala. 1999).

"Lacking subject matter jurisdiction [a court] may take no action other than to exercise its power to dismiss the action . . . . Any other action taken by a court lacking subject matter jurisdiction is null and void." *Ex parte Alabama Dep't of Transportation*, 2007 WL 2070347 (Ala. 2007) (quoting *Ex parte Blankenship*, 893 So. 2d 303, 307 (Ala. 2004) in turn quoting *Property at 2018 Rainbow Drive*, supra at 1028).

This Court finds that it lacked subject matter jurisdiction at the time of the filing of the original action on January 31, 2008, because neither Ms. Working nor Mr. Erdemir had standing to initiate this action. Because this Court lacked subject matter jurisdiction at the time this action was

8

commenced, the amendment adding Mr. McGinnis as a plaintiff "cannot relate back to the filing of the original complaint, because there is nothing 'back' to which to relate." *Property at 2018 Rainbow Drive*, supra at 1028.

This court concludes that the named plaintiffs have no legal standing to bring this action and their claims are due to be dismissed. They have suffered no particular injury in fact. However, because the Supreme Court has ordered this court to rule "on the merits," it will proceed to do so.

## II.
## CONSTITUTIONALITY OF ALABAMA ACT NUMBER 77-784.

Plaintiffs contend that Alabama Act Number 77-784 is unconstitutional because is conflicts with Article IV, § 105 of the Alabama Constitution of 1901.

> **"Sec. 105. Special, private or local laws -- Prohibited in cases provided for by general law; exception as to time of holding courts; partial repeal of general laws.**
> No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law."

The general law of Alabama on the subject of filling a vacancy occurring on a County Commission is found at Ala. Code (1975) §11-3-1. This general law was amended by Alabama Act No. 2004-455 which was signed into law by the Governor on May 14, 2004, after having been precleared by the United States Justice Department. The statute provides for the Governor to appoint

9

a commissioner when there is a vacancy on a county commission unless there is a local law to the

contrary. The emphasized words in the statute were added by the 2004 amendment.

> "(b) *Unless a local law authorizes a special election,* any vacancy on the county commission shall be filled by appointment by the Governor. If the appointment occurs at least 30 days before the closing of party qualifying as provided in Section 17-13-5, the person appointed to the vacated office shall only serve until seven days after the next general election following the appointment as provided herein. The person so appointed to fill the vacancy shall meet the residency requirements in subsection (a), and shall hold office from the date of appointment until the eighth day following the next general election. If the original term in which the vacancy occurred would not have expired on the eighth day following the next general election after the appointment, the person elected at the election required by operation of this subsection shall serve for a period of time equal to the remainder of the term in which the vacancy was created. Thereafter, election for the county commission seat shall be as otherwise provided by law."
>
> (f) Except as specifically provided in subsections (b) and © this section applies in all counties and may not be altered or amended by local law. Any existing local law or portion thereof in conflict with this section is specifically repealed to the extent of the conflict effective with the next election following September 1, 2007. *It is the intent of the foregoing that a portion of a local law in direct conflict with this section shall be repealed, and any remaining portions of the local law not in conflict shall remain in full force and effect.* (Emphasis added.)

Alabama Act 77-784 is a local act in that it applies only to Jefferson County. It provides in

pertinent part:

> "Section 1. As herein used the following terms have the meaning hereby ascribed to them: "the County" means Jefferson County, Alabama; "a vacancy" means a vacancy on the governing body of the County caused by death, resignation, impeachment, or any cause except normal expiration of terms; "first election hereunder" means the first election for which this Act provides to fill a vacancy as distinguished from the run-off election held hereunder, if a run-off election is necessary; "run-off election hereunder" means the run-off election for which this Act provides, if no candidate at the first election hereunder receives a majority of the votes cast; "a County wide election" means any election, whether general, special or primary, including run-off elections, whereat qualified electors throughout the county are entitled to vote and which is held to elect a Federal, State or County officer, or to nominate a candidate or candidates, for a Federal, State or County office or offices,

10

to submit one or more questions, including but not limited to, the question of adopting a proposed amendment to the Constitution of Alabama and the question of whether general obligation bonds, or revenue bonds, of the State or County shall be issued; "a scheduled County wide election" means a "County wide election" which is scheduled to be held on a date definitely determined when a vacancy occurs; and "the Election Commission" means the Election Commission of the County.

> Section 2.   Within seven days from the occurrence of any vacancy the Election Commission, by a majority vote thereof, shall adopt a resolution stating the dates on which the first election hereunder and the run-off election hereunder, if necessary, will be held.  The said dates will be determined as provided for in Sections 3 and 4, below.

> Section 3.   If when a vacancy occurs a County wide election is scheduled to be held more than forty days and not more than 180 days from the date whereon the vacancy occurs, the first election hereunder, to fill such vacancy, shall be held on the County wide election date. If when the vacancy occurs there is no County wide election scheduled to be held more than forty days and not more than 180 days after the date whereon the vacancy occurs, the first election hereunder, to fill the vacancy shall be held on a date specified by the Election Commission in the resolution, provided for in Section 2, above, which date shall be not less than thirty-three days and not more than forty days from the date on which the resolution is adopted."

In *Baldwin County v. Jenkins*, 494 So. 2d 584 (Ala. 1986), the Alabama Supreme Court was confronted with a statute and a local act addressing the election and terms of office of county commissioners.  The Supreme Court held that the general statute, Ala. Code (1975) § 11-3-1, as amended, containing the words, "unless otherwise provided by local law," evidenced the legislature's intent that the subject with which it dealt was not subsumed within it:

> "A situation completely opposite and contrary to the one presented here was contemplated and prohibited by the constitutional framers, which is to say that the legislature, by enacting a general law containing no such provision or exception for contrary local laws, thereby intended that general law to be primary and the subject subsumed entirely by the general law.  In that situation, § 105 does operate to prohibit the enactment of contrary local laws.  Such is not the case with respect to § 11-3-1 and Act No. 84-639.  Because the language of the statute provides for the existence of and prevailing effect of contrary local laws, it must be that the legislature did not intend the subject to be 'subsumed' exclusively within § 11-3-1.  That being

11

the case, the co-existence of the general law (§ 11-3-1) and the contrary local law (Act No. 84-639) deferred to in the general law, cannot be said to be repugnant to § 105 because the 'constitutional framers have [only] prohibited the enactment of a local law when the subject [as intended by the legislature] is already subsumed by the general statute.' *Peddycoart v. City of Birmingham*, 354 So. 2d 808, 813 (Ala. 1978). *Baldwin County v. Jenkins*, 494 So. 2d at 587.

The language "unless otherwise provided by local law," is also present in Ala. Code (1975) § 11-3-1(b) and is addressed in § 11-3-1(f).

Act No. 77-784 is not "in direct conflict with" § 11-3-1, but rather, pursuant to *Baldwin County v. Jenkins*, § 11-3-1 defers to Act No. 77-784.

Plaintiffs rely on *Riley v. Kennedy*, 928 So.2d 1013 (Ala. 2005). The facts in that case are remarkably similar to the facts in the case before this court. In *Riley v. Kennedy,* the relevant local act was Act No. 85-2327, which addressed the process for filling vacancies on the Mobile County Commission. The decision in that case concluded that Governor Riley was authorized to fill the vacancy by appointment. However, the fact that distinguishes the Mobile case from the one before this court is that the Mobile Act, Act No. 85-2327, had been declared unconstitutional by the Supreme Court in the case of *Stokes v. Noonan,* 534 So.2d 237 (Ala. 1988). The Supreme Court held that since the Mobile Act had been declared unconstitutional, it was not revived by the subsequent enactment of Act No. 04-455.

Act No. 77-784 has never been declared unconstitutional by any court. (Joint Stipulation of Fact Number 11). Because the Jefferson County Act has never been declared unconstitutional, it is still applicable to the dispute before the court. The Jefferson County statute did not need to be revived because it had never been declared unconstitutional before the enactment of Act No. 04-455.

12

Plaintiffs contend that, pursuant to *Stokes v. Noonan*, 534 So. 2d 237 (Ala. 1988), and *Riley v. Kennedy*, 928 So. 2d 1013 (Ala. 2005), the Alabama Supreme Court has implicitly held Act No. 77-784 to be unconstitutional. It is well settled law in Alabama that the repeal of a statute by implication is not favored. *Willis v. Kincaid*, 2007 WL 2687392 (Ala. 2007); *Shiv-Ram, Inc. v. McCaleb*, 892 So. 2d 299 (Ala. 2003); *Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n*, 294 Ala. 173, 314 So. 2d 51 (1975); *State v. Bay Towing & Dredging Co.*, 265 Ala. 282, 90 So. 2d 743 (1956).

Repeal by implication is only permitted when two statutes are so repugnant to each other that they become irreconcilable. *Hurley v. Marshall County*, 614 So. 2d 427 (Ala. 1993). Act No.04-455, as incorporated into § 11-3-1, contains nothing that is repugnant to Act No. 77-784. Instead, Act 04-455 opens the door to Act No. 77-784. Reading Act No. 04-455 to repeal the very local acts to which it opens the door would result in the statute having no field of operation and would result in Act No. 04-455 being futile and meaningless. This Court must presume that the legislature does not enact vain, meaningless or futile statutes. *Watley v. Transamerica Fin. Services, Inc.*, 708 So. 2d 890 (Ala. 1997).

The Alabama Legislature, through Act No.07-488 and Act No. 04-455 incorporated Act No. 77-784 into Ala. Code (1975) § 11-3-1(b) by adding the words, "Unless a local law authorizes a special election." In line with *Baldwin County v. Jenkins*, 494 So.2d 587 (Ala. 1986), the addition of those words removes any possible conflict between Act No. 77-784 and Article IV, § 105 of the Alabama Constitution. It also resolves any claim of repeal by implication.

Therefore, this court concludes that Act No. 77-784 is valid law and controls this dispute over Mr. Langford's replacement on the Jefferson County Commission.

### III.
### DID THE VOTING COMMISSION CORRECTLY CALL FOR
### A SPECIAL ELECTION ON FEBRUARY 5, 2008?

The Election Commission's interpretation of Act No. 77-784 and its calling of the Special Election on February 5, 2008, was not a misinterpretation of the law for several reasons. On November 13, 2007, the date of Mr. Langford's resignation, there was a "scheduled County wide election" that was scheduled to be held on a date definitely determined, the February 5, 2008, Presidential Preference Primary. That "scheduled County wide election" was more than 40 days and not more than 180 days from the date the vacancy occurred. Therefore, the plain and usual meaning of the words "a scheduled County wide election," as defined in Section One of Act No. 77-784, required that the Special Election must be held on February 5, 2008. The scheduled election was called for a time plainly set forth in the Act.

The definition of the term "County wide election" in Section One of Act No. 77-784 plainly states that a "County wide election" includes "*any* election including *any* primary to nominate a candidate for a federal office or *any* election where *one or more questions,*" are submitted to all of the qualified voters of Jefferson County.

The broad language to submit to the voters "one or more questions, including but not limited to," would encompass the questions: "Who do you prefer to be a party's nominee for President?", and/or "Who do you prefer to be a party's delegate?" Therefore, *any* election where qualified electors throughout the County are asked *any* question satisfies the definition of the term "County

14

wide election."  The February 5, 2008, Presidential Preference Primary was a "County wide election" as defined in Section One of Act No. 77-784.

The term "County wide election" is defined at Section One of Act 77-784 to include any election "to nominate a candidate for a federal ... office."  The Presidential Preference Primary is the method for the citizens of Alabama to engage in the process of nominating a candidate for the Office of President of the United States of America.  The object and result of a Presidential Preference Primary is to nominate each political party's candidate for the office of President.

In construing a statute, a Court is required to give the words of the statute the plain and usual meaning of those words and is prohibited from ignoring such plain and usual meaning of words. *Adams v. Mathis*, 350 So. 2d 381, 384 (Ala. 1977), citing *Morgan County Commission v. Powell*, 292 Ala. 300, 293 So. 2d 830 (1974).The plain and usual meaning of the words used to define a "County wide election" in Act 77-784 clearly encompasses the February 5, 2008 Presidential Preference Primary.

## IV.
## FINAL JUDGMENT

In construing a statute, a Court is required to give effect to the intent of the legislature. *Perry v. City of Birmingham*, 906 So. 2d 174 (Ala. 2005).  It is clear from the plain language of the statute, Act No. 77-784, that the legislature intended that (1) a vacancy on the Jefferson County Commission be filled by a Special Election of the voters and not by appointment of the Governor and (2) the Special Election be scheduled to occur *at the same time* as an election already scheduled in which all of the qualified voters of Jefferson County are entitled to vote, provided that election

15

does not occur sooner than 40 days or more than 180 days from the date of the vacancy. The Court must give effect to, rather than frustrate, that legislative intention.

Wherefore premises considered, it is **Ordered and Adjudged** as follows:

1. The plaintiffs have no standing to bring this action and it is due to be dismissed for lack of jurisdiction.

2. Alabama Act. No. 77-784 is constitutional and does not violate Article IV, § 105, of the Alabama Constitution of 1901. Therefore the Governor's appointment of George F. Bowman to the Jefferson County Commission was unauthorized.

3. The Special Election scheduled and held on February 5, 2008 was held at the time required by Act No. 77-784 and the Jefferson County Election Commission did not err in scheduling the election.

4. When the final results of the election of February 5, 2008 are certified by the Election Commission, the winner of the election will be entitled to be the Jefferson County Commissioner for District Number One.

5. Costs are taxed as paid.

6. The Supreme Court of Alabama retains jurisdiction over this case. That court's order enjoining the Election Commission from certifying the result of the election remains in force and effect. Therefore, the terms of this judgment are stayed until that Court has reviewed this Judgment.

**Done and ordered, this the 18th day of March, 2008.**

_____
**J. SCOTT VOWELL, PRESIDING JUDGE**

16

IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| PATRICIA WORKING, RICK ERDEMIR, and FLOYD MCGINNIS,<br><br>State of Alabama ex FLOYD MCGINNIS,<br><br>      Plaintiffs<br>vs.<br><br>JEFFERSON COUNTY ELECTION COMMISSION, ALAN KING, MIKE HALE, ANNE-MARIE ADAMS, WILLIAM A. BELL, SR.,<br><br>      Defendants,<br><br>FRED L. PLUMP,<br><br>      Defendant-Intervenor. | Civil Action No. CV-2008-900316 |
| STATE OF ALABAMA EX REL. FRED L. PLUMP<br><br>      Third-Party Plaintiff,<br><br>vs.<br><br>GEORGE BOWMAN,<br><br>      Third-Party Defendant. | . |

## JOINT STIPULATION OF UNDISPUTED FACTS

Come now the parties in this case, on their own behalf or by and through the undersigned counsel of record, as designated below, and hereby stipulate and agree that the

1

Exhibit 1

following facts are true and undisputed:

1.    Plaintiff, Patricia Working, is an adult residing in Birmingham, Alabama, and is a qualified elector of Jefferson County Commission District 4.    Working has, in the past, paid Alabama real property tax on real property in Jefferson County.

2.    Plaintiff, Rick Erdemir, is an adult residing in Birmingham, Alabama, and is a qualified elector of Jefferson County Commission District 4.    Erdemir has, in the past, paid Alabama real property tax on real property in Jefferson County. Erdemir pays a license tax to Jefferson County as a result of engaging in an occupation, and earning wages, within Jefferson County.

3.    Plaintiff, Floyd McGinnis, is an adult residing in Birmingham, Alabama, and is a qualified elector of Jefferson County Commission District 1.  McGinnis paid 2007 Alabama real property tax on real property in Jefferson County.

4.    Intervenor, Fred Plump, is an adult residing in

2

Fairfield, Alabama, and is a qualified elector of Jefferson County Commission District 1. Plump has paid 2007 Alabama real property tax on real property in Jefferson County. Further, Plump qualified as a candidate and his name appeared on the ballot in the Special Election which occurred on February 5, 2008, to fill a vacancy on the Jefferson County Commission.

5. Defendant, William A. Bell, is an adult residing in Birmingham, Alabama, and is a qualified elector of Jefferson County Commission District 1. Bell has paid 2007 Alabama real property tax on real property in Jefferson County.

6. Defendant, the Jefferson County Election Commission consists of Alan King, Probate Judge of Jefferson County; Anne-Marie Adams, Circuit Clerk, Tenth Judicial Circuit of Alabama; and, Mike Hale, Sheriff of Jefferson County, Alabama.

7. Third-party defendant, George F. Bowman was appointed by the Honorable Bob Riley, Governor of the State of Alabama, to fill the vacancy on the Jefferson County

3

Commission created by the resignation of Larry Langford. Governor Riley appointed Commissioner Bowman to fill the vacancy on November 21, 2007.

8.    Intervenor, Governor Bob Riley is the chief executive officer of the State of Alabama and is authorized to intervene in this case.

9.    Alabama Act 77-784 was enacted by the Legislature and approved by the Governor on May 25, 1977.  See Act 77-784 attached as Exhibit A.  Act No. 77-784 is a local law, in that it applies only to Jefferson County.

10.    At the time that Act No. 77-784 was enacted, the general law provided:  "In case of a vacancy, it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he is appointed."  Ala. Code § 11-3-6 (1989).

11.  No court has issued a judgment which expressly declares Alabama Act 77-784 to be unconstitutional.

12.    In *Stokes v. Noonan*, 534 So.2d 237 (Ala. 1988), the Alabama Supreme Court ruled that a Mobile County local

law, namely Act No. 85-237, violated § 105 of the Alabama Constitution because it set out a local law for filling vacancies on the Mobile County Commission when there was already a general law on the same subject.

13. Alabama Act 77-784 was submitted to the United States Department of Justice for pre-clearance under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, on or about June 22, 1977. See submission letter attached as Exhibit B.

14. The United States Department of Justice issued a "no objection" letter to Act 77-784 on August 11, 1977. See letter attached as Exhibit C.

15. On January 15, 1982, the President of the Jefferson County Commission, Tom Gloor, resigned from office. See newspaper articles attached as Exhibit D.

16. Pursuant to Act 77-784, the Jefferson County Election Commission called a Special Election for March 2, 1982. See Exhibit D.

17. March 2, 1982, was selected as the date for the Special Election pursuant to the first sentence of Section

3, Act 77-784, since there was a county-wide election scheduled for that date to submit to the voters three (3) proposed amendments to the Alabama Constitution. See Certification of Results of Election, Exhibit E.

18. On March 2, 1982, a Special Election was held pursuant to Act 77-784, to fill Tom Gloor's unexpired term. Chriss Doss was certified as the winner of the March 2, 1982, Special Election by the Jefferson County Election Commission on March 4, 1982, and took office as President of the Jefferson County Commission on March 4, 1982. See Certification of Election attached as Exhibit F.

19. The election of Chriss Doss as President of the Jefferson County Commission resulted in a vacancy in the position Associate Commissioner No. 1 on the Jefferson County Commission.

20. On April 13, 1982, a Special Election was held pursuant to Act 77-784, to fill Chriss Doss's unexpired term as Associate Commissioner No. 1 on the Jefferson County Commission. The date of that Special Election was set pursuant to the second sentence of Section 3, Act 77-

6

784, as there was no scheduled county-wide election.

21. That Special Election required a runoff which occurred on May 4, 1982. See Certification of Election, attached as Exhibit H. Ray Moore was certified by the Jefferson County Election Commission as the winner of the runoff election on May 5, 1982 and took office on May 5, 1982. See Certification of Election attached as Exhibit I.

22. The Special Election dates to fill commissioner vacancies in 1982 were neither submitted to, nor approved by, the U.S. Attorney General or the U.S. District Court for the District of Columbia.

23. The form of the governing body of Jefferson County, Alabama, changed from a three member Commission which was elected at large to a five member Commission which is elected from five, single member districts. This change resulted from a Consent Decree entered by the United States District Court for the Northern District of Alabama, Southern Division, in a case styled *Michael Taylor, et al. v. The Jefferson County Commission, et al.*, Civil Action No. 84-C-1730-S.

24. In 1997, the changed form of government was enacted as an Alabama statute by the Alabama legislature in Act No. 1997-147. That statute created and established in Jefferson County a single-member district governing body.

25. On March 29, 2001, Chris McNair resigned from the position of Commissioner, District 2, on the Jefferson County Commission. See resignation letter attached as Exhibit L.

26. On March 29, 2001, the Reverend Steve Small was appointed to fill Chris McNair's unexpired term by then Governor of Alabama, Don Siegelman. See appointment letter attached as Exhibit M.

27. No preclearance submission concerning Governor Siegelman's appointment of Reverend Small has been made as of this time.

28. Alabama Act 2004-455 was enacted by the Legislature and approved by the Governor of Alabama on May 14, 2004. That Act amended § 11-3-6, Code of Alabama, to provide as follows:

> "<u>Unless a local law authorizes a special election</u>, in case of a vacancy, it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he or she is appointed."

The underlined language is the new language added by Act 2004-455.  See Act 2004-455 attached as Exhibit N.

29.  Act No. 2004-376 was enacted by the Alabama legislature and approved by the Governor on May 3, 2004. Act No. 2004-376 was submitted to the U.S. Dept. of Justice for preclearance on January 12, 2005.  The submission is attached as Exhibit W. The U.S. Dept. of Justice issued a "no objection" letter to Act No. 2004-376 on March 11, 2005.  See Exhibit X.

30.  Act 2004-455 was submitted to the United States Department of Justice for preclearance on August 9, 2004, by the Attorney General of Alabama.  See submission letter attached as Exhibit O.

31.  The United States Department of Justice issued a "no objection" letter to Act 2004-455 on September 28, 2004.  See letter attached as Exhibit P.

32.  On October 9, 2007, Larry Langford, Jefferson

County Commissioner District 1, was elected as Mayor of the City of Birmingham, Alabama.

33. On October 29, 2007, the Jefferson County Election Commission adopted a resolution calling a Special Election to be held on February 5, 2008, to fill any vacancy which might exist on the Jefferson County Commission upon the assumption by Commissioner Langford of the Office of Mayor. See Resolution attached as Exhibit Q. At the time the Resolution was adopted, there was not yet any vacancy on the Jefferson County Commission, and there was an election contest concerning the mayoral election.

34. Larry Langford resigned from the Jefferson County Commission and was sworn in as the Mayor of the City of Birmingham, Alabama, on November 13, 2007. See resignation letter attached as Exhibit R.

35. On November 21, 2007, Alabama Governor Bob Riley appointed George F. Bowman to fill the unexpired term of Larry Langford on the Jefferson County Commission. See appointment letter attached as Exhibit S.

36. No preclearance submission concerning Governor

10

Riley's appointment of George Bowman has been submitted to the United States Department of Justice at this time, however, Governor Riley has informed the federal court in *Plump v. Riley*, Case No. 2:07cv1014 (M.D. Ala. pending), that a submission will be made.

37. Six candidates followed the procedures to qualify to have their names placed on the ballot for the February 5, 2008, special election, which had been called by the Jefferson County Election Commission in reliance on Act No. 77-784 and the legality of which is the subject matter of this litigation. Those candidates were George F. Bowman, William A. Bell, Fred L. Plump, Orville Ifill, Kamau Afrika, and Eric Major.

38. Larry Langford, George F. Bowman, William A. Bell, Fred L. Plump, Orville Ifill, Kamau Afrika, and Eric Major are all African-American men.

39. On November 27, 2007, a preclearance submission was made to the United States Department of Justice concerning the special election that is the subject of this litigation.

11

40. The United States Department of Justice issued a "no objection" letter concerning the special election that is the subject of this litigation on January 17, 2008. See letter attached as Exhibit U.

41. According to unofficial returns, William A. Bell received more than a majority of the votes cast on February 5, 2008, in the special election that is the subject of this litigation.

42. The Jefferson County Election Commission was scheduled to meet at 12:00 noon on Friday, February 15, 2008, *see* § 17-12-15, Alabama Code (2006), to certify William A. Bell as the winner of the special election that is the subject of this litigation.

43. On Thursday, February 14, 2008, the Supreme Court of Alabama enjoined the Jefferson County Election Commission from certifying the results of the February 5, 2008, special election, pending further orders of the Supreme Court of Alabama.

44. A portion of Alabama real property tax collected on real property located within Jefferson County, Alabama,

12

is distributed to the Jefferson County General Fund.

45. A portion of the Jefferson County license tax paid for engaging in an occupation and earning wages within Jefferson County is paid to the Jefferson County General Fund.

46. Jefferson County's General Fund is used to pay persons to administer elections at the direction of the Jefferson County Election Commission, including the February 5, 2008, presidential preference primary election. As a result of the Election Commission's resolving to conduct an election, monies appropriated from Jefferson County's General Fund pay for the printing of ballots, including the ballots used during the February 5, 2008, presidential preference primary election.

47. The ballots used during the February 5, 2008, presidential preference primary election included a space to vote for the position of Jefferson County Commission, District One commissioner. A copy of the ballot is attached as Exhibit V.

13

48. There has never been a previous occasion in Jefferson County when a county commissioner position vacancy had been filled by a special election held the same day as a presidential preference primary.

49. A primary election to nominate persons to be candidates for federal, state or county office is scheduled for the first Tuesday in June 2008. That election is conducted on a countywide basis. A general election for voters to choose between nominees for the federal, state or county office is scheduled for November 2008.

50. By stipulating to these facts, the parties do not necessarily agree that each fact is relevant or necessary to a decision in this case.

51. These stipulations are made for the purpose of this litigation only and are not to be used for any other purpose.

Dated this 6th day of March, 2008.

14

All parties having explicitly agreed to these stipulations, they are hereby submitted by,

James U. Blacksher
P O Box 636
Birmingham AL 35201
      phone: 205-591-7238
      fax: 866-845-4395
      email: jblacksher@ns.sympatico.ca

/s/ Edward Still
Edward Still (STI009)
2112 11th Avenue South
Suite 201
Birmingham AL 35205-2844
      phone: 205-320-2882
      fax: 877-264-5513
      email: Still@votelaw.com

## CERTIFICATE OF SERVICE

I certify that on 6 March 2008 I electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following attorneys:

| | |
|---|---|
| Walter E. Braswell, Esq.<br>2101 4th Ave S, # 200<br>Birmingham, AL 35233 | Jeffrey M. Sewell, Esq.<br>Assistant County Attorney<br>Jefferson County<br>280 Jefferson County Courthouse<br>716 Richard Arrington Jr. Blvd. North<br>Birmingham, AL 35203 |
| Albert L. Jordan, Esq.<br>Wallace, Jordan, Ratliff & Brandt, LLC<br>P O Box 530910<br>Birmingham, AL 35253-0910 | Charlie D Waldrep, Esq.<br>Susan Walker, Esq.<br>Waldrep Stewart & Kendrick LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203 |
| Michael K. K. Choy, Esq.<br>Margaret Mary Fullmer, Esq.<br>Haskell Slaughter Young & Rediker, LLC<br>1400 Park Place Tower<br>2001 Park Place N.<br>Birmingham, AL 35203-2735 | James W. Davis, Esq.<br>Assistant Attorney General<br>Office of the Attorney<br>11 South Union Street<br>Montgomery, AL 36130-0152 |

15

| Hon. George Bowman<br>Suite 240 Courthouse<br>716 Richard Arrington Bvld. North<br>Birmingham, AL 35203<br>(served by email) | |

/s/ Edward Still



**AlaFile E-Notice**

**01-CV-2008-900316.00**

Judge: J SCOTT VOWELL

To:  STILL W EDWARD
docket@votelaw.com

---

# NOTICE OF ELECTRONIC FILING

---

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

### PATRICIA WORKING ET AL v. JEFFERSON COUNTY ELECTION COMMISSION ET AL
### 01-CV-2008-900316.00

The following matter was FILED on 3/18/2008 9:21:20 AM

Notice Date:      3/18/2008 9:21:20 AM

**ANNE-MARIE ADAMS**
**CIRCUIT COURT CLERK**
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov

# Exhibit B

593

Act No. 429

H. 962—Kaul, Nice, Lackey, Vacca, Edwards (Jefferson), P e r r y, Adams (Jefferson)

## AN ACT

Relating to counties having a population of 500,000 or more, according to the last or any subsequent federal decennial census; providing further for the filling of vacancies which occur in certain public offices.

*Be It Enacted by the Legislature of Alabama:*

Section 1.   Whenever any vacancy occurs in any elective state or county office in any county having a population of 500,000 or more, according to the last or any subsequent federal decennial census, the vacancy shall be filled in the manner prescribed by law, but any person appointed to fill any such vacancy shall hold office only until the next general election for any state officer held at least six months after the vacancy occurs, and until his successor is elected at such election and qualified.   The successor chosen at such election shall hold office for the unexpired term, and until his successor is elected and qualified.

Section 2.   This Act shall not apply to or affect the term of any person holding office on the effective date hereof.

Section 3.   If any provision of this Act, or the application thereof to any person or circumstance, is held invalid or inoperative by any court of competent jurisdiction, the remainder of the Act and the application thereof to any other person or circumstance shall not be affected thereby.

Section 4.   All laws or parts of laws which conflict with this Act are repealed.

Section 5.   This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

Approved September 6, 1957.
Time:  11:48 A. M.