IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FRED L. PLUMP, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:07-cv-1014-MEF |
| | ) | |
| BOB RILEY, as | ) | (WO) |
| Governor of the State of Alabama, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Fred Plump brought this case pursuant to Sections 2 and 5 of the Voting Rights Act and the Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution.  He sought redress for alleged violations of those statutes and constitutional provisions, and we granted declaratory judgment in favor of Plaintiff on the Section 5 claim. We then entered a final judgment on that claim, and Defendant Governor Bob Riley appealed the case to the Supreme Court of the United States.  Jurisdiction returned to us after the Supreme Court dismissed Governor Riley's appeal for lack of jurisdiction, and Plaintiff renewed his previous motion for attorneys fees.  Governor Riley opposed that motion and moved us to dismiss the case as moot and vacate our prior order and judgment.

The case is, therefore, before the Court on a Motion to Vacate and Dismiss as Moot (Doc. # 54), which Governor Riley filed on November 12, 2008.  A Motion for Attorneys'

Fees and Expenses (Doc. # 51), which Plaintiff filed on October 20, 2008, is also under submission.  The single-judge Court to which this case was originally assigned will resolve the Motion for Attorneys' Fees and Expenses.  After careful consideration of the relevant portions of the record, the arguments of the parties, and the applicable law, the Motion to Vacate and Dismiss as Moot is due to be DENIED.

## II. Factual and Procedural History

### A. The Panel Decision

Plaintiff Fred Plump ("Plump") filed this case on November 16, 2007. (Doc. # 1.)  He named Governor Bob Riley ("Governor Riley" or "the Governor") as defendant in his official capacity as Governor of the State of Alabama.  Plump claimed that Governor Riley's appointment of a replacement for former Jefferson County Commissioner Larry Langford violated Section 5 of the Voting Rights Act because the appointment was a change in voting procedures that required preclearance from the Department of Justice or the U.S. District Court for the District of Columbia.  Plump also sought redress under Section 2 of the Voting Rights Act and the Thirteenth, Fourteenth, and Fifteenth Amendments to the Constitution of the United States.  These claims sought to remedy dilution of Plump's voting rights, perpetuation of white supremacy, denial of equal protection of the laws, and denial of voting rights on account of race.

Plump sought a declaratory judgment that Governor Riley's authority to appoint a person to fill a vacancy on the Jefferson County Commission must be precleared.  He also asked the Court to enjoin the appointment by Governor Riley of General George F. Bowman

("General Bowman") to the Jefferson County Commission, and to enjoin Governor Riley from interfering with the election to fill the vacancy, which was at the time scheduled for February 5, 2008. He also sought a declaratory judgment that the appointment violated Section 2 of the Voting Rights Act and the Thirteenth, Fourteenth, and Fifteenth Amendments. We were convened to adjudicate Plump's Section 5 claim.

Following oral argument on January 15, 2008, we entered an Opinion and Order resolving the Section 5 claim in favor of Plump. The Opinion first noted the similarity between *Plump v. Riley* and *Kennedy v. Riley*, a different case brought under section 5 of the voting rights act. At the time of the panel Opinion, the Supreme Court had granted certiorari in the *Kennedy* case. We largely followed the panel decision in *Kennedy* and held that the authority of Governor Riley to appoint persons to fill vacancies on the Jefferson County Commission was a change in practice that must be precleared. We likewise held that Plump was entitled to declaratory relief to that effect. We therefore granted declaratory judgment to Plump but denied the requests for preliminary and permanent injunctions because those injunctions were not appropriate forms of relief based on the factual posture of the case. We declined to remove General Bowman from office and allowed the Defendant time to either (1) seek preclearance under the Voting Rights Act, or (2) advise the court that he intended to appeal the decision.

Notably, the body of the opinion concluded with the following sentence:

This court being mindful that the substantially-similar *Kennedy* decision is currently pending before the U.S. Supreme Court, the court will enter final judgment in this case to allow for a prompt appeal, if that is desired, and for

the possibility of consolidation on appeal of this case with *Kenedy*, should the
U.S. Supreme Court wish to consider the cases together.

(Doc. # 28 8.) The Opinion also provided that, in the event Governor Riley either failed to

notify the Court that he would seek preclearance, notified the Court that he intended to

appeal the decision, or failed to secure preclearance, "the seat currently occupied by General

George F. Bowman shall be vacated on [February 5, 2008] without further order of this

court." (Doc. # 28 9.)  The Opinion concluded: "[a]n appropriate judgment will be entered."

(Doc. # 28 9.)  We subsequently entered a Final Judgment (Doc. # 29), and entered an

Amended Judgment (Doc. # 33) to correct an error in the first Final Judgment ("the Section

5 Judgment").  The Amended Judgment directed the clerk to "enter th[e] document on the

civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure"

(Doc. # 33), so that appeal could be taken and the case consolidated with the *Kennedy* case

if that was appropriate.

In March, 2008, the Attorney General of the State of Alabama both made the

preclearance submission required by the panel opinion and noticed his intent to appeal to the

Supreme Court of the United States.

**B. State Court Litigation**

Litigation arising out of the same events that led to this action began in state court

shortly after we entered the Section 5 Judgment.  This litigation resulted in a June 30, 2008,

opinion of the Alabama Supreme Court, *Working v. Jefferson County Election Commission*,

2 So. 3d 827 (Ala. 2008).  The Alabama Supreme Court held that Governor Riley was

correct, as a matter of state law, to make an appointment to fill the vacancy on the Jefferson County Commission, but that the appointment was only valid until the appointee's successor could be elected in November, 2008.  This decision led to two additional preclearance submissions, and the Department of Justice granted the preclearance necessary to add the Jefferson County Commission seat to the November, 2008 ballot.[1]

### C. Election

The citizens of Jefferson County District One elected William Bell to the Jefferson County Commission seat formerly held by Larry Langford in November, 2008. General Bowman, Governor Riley's appointee, left office on November 11, 2008, and William Bell assumed the office the next day.

### D. Proceedings in the Supreme Court

Governor Riley filed a Jurisdictional Statement in the Supreme Court of the United States on May 21, 2008,[2] fifty-seven days after the Section 5 Judgment.  The Governor took the position that he was "effectively out of court" and that the Judgment in this case was final and left nothing for the court to do but execute the judgment.  The Governor urged that "[o]n balance, then, this Court should conclude that the district court's order ha[d] achieved finality

---

[1]The Department of Justice took the position that one of the preclearance submissions made in response to the *Working* litigation superseded the submission made in response to the instant action.

[2]A jurisdictional statement is similar to a petition for writ of certiorari, except the former is used in cases that fall under the Court's appellate jurisdiction, while the latter is used in cases that fall under the Court's certiorari jurisdiction.  *See* Eugene Gressman, *et al.*, *Supreme Court Practice* 362-64 (9th ed. 2007).

and that one or the other of the notices of appeal was timely filed."[3]

The Supreme Court decided *Kennedy v. Riley* six days after Governor Riley filed the Jurisdictional Statement.

Plump filed a Motion to Dismiss or Affirm in response to Governor Riley's Jurisdictional Statement.  In that Motion, Plump first argued that the appeal should be dismissed for lack of jurisdiction because the Governor failed to timely file notices of appeal from the interlocutory orders he was challenging.  Plump pointed to 28 U.S.C. § 2101(b), which requires appeals from interlocutory orders to be taken within thirty days, and noted that the Governor took the appeal in this case in fifty-seven days.[4]  Plump argued that the Judgment was interlocutory and not final because (1) the Judgment addressed only one of the claims presented, and thus could not be final because it did not resolve all of the causes of action presented in the complaint; (2) the district court did not follow the mechanism provided by Rule 54(b) for entering final judgment on a single claim; (3) the timing and nature of the relief were left in limbo.

Governor Riley filed an Opposition to the Motion to Dismiss or Affirm on August 4,

---

[3]The Governor did note, however, that he was concerned about the finality of the judgment.  His concerns were as follows: (1) the three-judge court did not resolve all the claims in the plaintiff's amended complaint, specifically the plaintiff's section 2 and constitutional claims; (2) that the Court might not have authority to enter a final judgment on a motion for preliminary injunction; and (3) that the court's remedy order provided for "contingent, springing injunctive relief."

[4]28 U.S.C. § 2101(b) provides that direct appeals to the Supreme Court must be taken "within thirty days from the judgment, order or decree, appealed from, if interlocutory, and within sixty days if final."

2008. In it, he made several arguments on the merits in addition to opposing Plaintiff's timeliness argument.  The Governor responded to each of Plump's arguments that the Judgment was not final.  First, he pointed out that he brought the unresolved claims to our attention, and we did not respond.  Second, he noted that, while this Court never specifically raised Rule 54(b), it did encourage prompt appeal and consolidation with *Kennedy*.  The Governor also pointed to the language directing the Clerk to enter the Judgment as a final judgment.  Finally, the Governor argued that the contingent nature of the Judgment left nothing for the Court to do, and that while it was not clear what relief would materialize, the Governor was "effectively out of court," which meant that the judgment was final.  Thus, argued the Governor, the Supreme Court should conclude that the appeal was timely and the district court judgment had achieved finality.

On September 22, 2008, Plump filed a Supplemental Brief in Support of his Motion to Dismiss or Affirm.  In that brief, Plump reiterated his arguments that the appeal was untimely because the Judgment was not final.  He also argued that the Supreme Court should dismiss the case as moot because the challenged practice received preclearance on September 15, 2008.  Thus, argued Plump, he had received what he sought in his complaint: compliance with section 5's preclearance requirement.  Plump continued that, because the case was now moot, that it was appropriate for the Court to dismiss the petition, leaving intact the judgment below.

The Governor then responded to Plump's supplemental brief.  He took the position that Plump's Supplemental Brief in Support of his Motion to Dismiss of Affirm was an effort

7

to better his chances to recover attorneys' fees.  The Governor argued that, while it was not clear whether the appeal was moot at that time, it would become so in November, when the seat in question would be filled by election.  The Governor argued that the Supreme Court should not leave the judgment below intact.

After considering the above submissions, the Supreme Court entered an untitled order that contained the following language: "Appeal from the United States District Court for the Middle District of Alabama. Appeal dismissed for want of jurisdiction." (Doc. # 53.)

### E. Motion for Attorneys' Fees and Expenses

On October 20, 2008, Plump filed a Renewed Motion for Attorneys' Fees and Expenses.  (Doc. # 51.)  In the Motion, Plump argues that we granted judgment to him in the Section 5 Judgment.  He also argues that he is the "prevailing party" and his attorneys are entitled to reasonable fees under 42 U.S.C. §§ 1973, 1988(b).

Governor Riley filed a Notice of Lack of Jurisdiction and Opposition to Plaintiff's Renewed Motion for Attorney's Fees and Expenses the next day.  (Doc. # 52.)  In the opposition, the Governor argued that jurisdiction had not returned to this Court from the Supreme Court.[5]  The Governor also argued that Plaintiff made two sets of argument in the Supreme Court that would strip this Court of jurisdiction over this case and would prevent an award of attorney's fees: (1) that there is no final judgment in this case, or (2) that the case is moot.  This Motion will be addressed after remand by the single-judge court to which this

---

[5]A prior decision of the Court determined that jurisdiction had returned from the Supreme Court. (Doc. # 57) ("Because the Supreme Court has entered its judgment in this matter, this Court may properly exercise jurisdiction.").

case was originally assigned.

### F. Motion to Vacate and to Dismiss as Moot

The Governor filed a Motion to Vacate and Dismiss as Moot on November 12, 2009. (Doc. # 54).  In the Motion, which was filed after the Supreme Court dismissed the case for want of jurisdiction, the Governor argues that the case became moot when William Bell assumed the seat on the Jefferson County Commission originally occupied by Larry Langford and to which Governor Riley appointed General Bowman.  The Governor argues that in order to dismiss the case the way it did, the Supreme Court must have accepted Plump's argument that the Section 5 Judgment was not final, which means Bell's assumption of the Commission seat in question mooted the case prior to judgment.  Because it presents a serious challenge to our jurisdiction, we turn now to this Motion.

### III. DISCUSSION

### A. Mootness

The Governor argues that Plump's Section 5 claim (the only claim before us) is moot. That claim sought to force the Governor to seek preclearance of his appointment of General Bowman to the Jefferson County Commission and to have us vacate the appointment of General Bowman.  The Governor in fact sought preclearance, and General Bowman has since left office following an election in which the people of Jefferson County District One chose William Bell as their Commissioner.  Therefore, argues Governor Riley, the litigation is moot.  The question that ultimately determines the outcome is whether the Section 5 Judgment was, in fact, a "final judgment."  If so, Defendant's mootness argument fails

because a case cannot become moot after final judgment.  If the Section 5 Judgment is not a final judgment, then the case is moot, and it is beyond our power to hear it any longer.

### 1. Finality of the Judgment

When this case was before the Supreme Court, Defendant argued the judgment was final; Plaintiff argued it was not.  Now, circumstances have changed.  Each party has cast its argument aside and picked up the other's.  Hence, Plaintiff now argues that the Section 5 Judgment was final; Defendant argues it was not.  We turn first to the proceedings in the Supreme Court.

### a. Proceedings in the Supreme Court

Governor Riley filed a jurisdictional statement in the Supreme Court fifty-seven days after the Section 5 Judgment.  Plump argued that the Supreme Court lacked jurisdiction because the Governor failed to timely file a notice of appeal from the Section 5 Judgment, which Plump argued was interlocutory.  Plump argued that 28 U.S.C. § 2101(b) required appeals from interlocutory orders to be taken within thirty days, so the Governor's appeal was untimely.  The Governor argued that the Section 5 Judgment was final, so the notice of appeal was timely filed within the sixty day window provided for appeals of final orders by 28 U.S.C. § 2101(b).  The Supreme Court entered an order that stated: "Appeal from the United States District Court for the Middle District of Alabama.  Appeal dismissed for want of jurisdiction." (Doc. # 53.)

The Governor now argues that by this order the Supreme Court accepted Plump's argument and thus necessarily decided that the Section 5 Judgment was not final.  Plump

disagrees. For the reasons set forth below, the Order of the Supreme Court dismissing the appeal for want of jurisdiction is not determinative.[6]

The Supreme Court will summarily dismiss an appeal where jurisdiction is lacking. Eugene Gressman, et al., *Supreme Court Practice* 306-07 (9th ed. 2007). The current practice is to dismiss such an appeal "for want of jurisdiction" without specifying the specific jurisdictional problem. *Id.* In the past, the Court made some effort to specify the jurisdictional defect, such as the untimeliness of the notice of appeal. *Id.* The Court will also note when an appeal is moot. *Id.*

In this case, the Court did not note the basis for its summary dismissal, other than to state that the appeal was dismissed for want of jurisdiction. The Motion to Dismiss therefore requires an independent analysis of the finality of the Section 5 Judgment.

### b. Rule 54(b)

The Governor argues that the Section 5 Judgment is not a final judgment and cannot be made final by its own assertions to that effect. Under the right circumstances, this

---

[6]Assessing the import of this ruling requires us to venture into the nebulous world of Supreme Court appellate jurisdiction. Section 1253 of Chapter 28 of the United States Code provides for direct appeal of three-judge rulings like the Section 5 Judgment to the Supreme Court. Perhaps Wright & Miller say it best: "Section 1253 of the Judicial Code, regulation jurisdiction of appeals from three-judge district courts, cannot be explained with any confidence or clarity." 17 Charles Allen Wright, et al., *Federal Practice and Procedure* § 4040 (3d ed. 2007). They continue: "a labyrinthian and even bizarre body of jurisdictional rules has grown up around § 1253. . . . Collectively, the rules surrounding § 1253 stand in flagrant disregard of the fundamental precept that rules of appellate jurisdiction should be clear and simple." *Id.*

It is against this background of uncertainty that we must decide whether what by all appearances is a final declaratory judgment entered by us is, in fact, a final judgment.

argument can be sound—the label used by a district court does not determine a judgment's finality. *See Riley v. Kennedy*, 128 S. Ct. 1970, 1981 (2008); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1369 (11th Cir. 1983) ("[A] certification [under Rule 54(b)] of final judgment cannot for purposes of appeal render final a judgment which is interlocutory."). A court must determine the finality of a judgment independent of the characterization used by the district court. *See id.*

A final judgment is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Ordinarily, however, an order adjudicating fewer than all the claims in a suit, or adjudicating the rights and liabilities of fewer than all the parties, is not a final judgment. *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007). The Federal Rules of Civil Procedure do provide a mechanism for entering a final judgment prior to resolution of all claims in a multi-claim action. Federal Rule of Civil Procedure 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).[7] Thus, a three-judge court is free to enter a final judgment on the Section 5 Claim alone, provided it meets the requirements of this rule. *See, e.g., Larios v.*

---

[7]Rule 54(a) defines "judgment": "'Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment should not include recitals of pleadings, a master's report, or a record of prior proceedings."

*Cox*, 300 F. Supp. 2d 1320, 1357-58 (N.D. Ga. 2004) (three-judge court).

Courts must follow a two-step analysis to independently determine whether the Section 5 Judgment is a final judgment. First, the court must determine whether the putative judgment is, in fact, both "final" and a "judgment." *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980); *Lloyd*, 483 F.3d at 777. That is, the Section 5 Judgment must be "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action,'" and a "'judgment' in the sense that it is a decision upon a cognizable claim for relief." *Id.* (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). Second, if the court finds that the putative judgment was final and a judgment, it must then look to whether the issuing court determined that there was no "just reason for delay" in certifying it as final and immediately appealable. *Lloyd*, 483 F.3d at 777. This second inquiry is required in part because Rule 54(b) allows "direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay*." Fed. R. Civ. P. 54(b) (emphasis added).

### i. "Final"

The Eleventh Circuit has held a judgment must be "an ultimate disposition of an individual claim entered in the course of a multiple claims action," in order to be considered final. *Lloyd*, 483 F.3d at 777; *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995) ("'final' within the meaning of Rule 54(b) . . . means that the judgment disposes entirely of a separable claim or dismisses a party entirely.") The Section 5 Judgment was "an ultimate disposition of an individual claim, " *Lloyd*, 483 F.3d at 777, and "dispos[ed] entirely of a

separable claim," *In re Se. Banking Corp.*, 69 F.3d at 1547, and is therefore final.

The inquiry turns on the interpretation of "claim for relief" under Rule 54(b). *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 860 F.2d 1441, 1444 (7th Cir. 1988). Although the Eleventh Circuit  has noted that "the line between deciding one of several claims and deciding only part of a single claim is very obscure," it has also held that "when the plaintiff presents more than one legal theory, but will be permitted to recover on only one of them[,] . . . there is only a single inseparable claim for relief." *Lloyd Noland*, at 780;   *In re Se. Banking Corp.*, 69 F.3d at 1547; *see also Schexnaydre v. Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir. 1976).[8] Thus, the touchstone for determining whether an entire "claim" has been adjudicated for the purposes of Rule 54(b) is whether that claim is "separately enforceable" without "mutually exclu[ding]" or "substantially overlap[ping]" with remedies being sought by the remaining claims pending in the district court. *In re Se. Banking Corp.*, 69 F.3d at 1547; *see also Lloyd*, 483 F.3d at 780 ("even if a district court has adjudicated one count of a complaint, but another count seeks substantially similar relief, the adjudication of the first count does not represent a "final judgment" because both counts are functionally part of the same claim under Rule 54(b)"). Claims substantially overlap when they present two "alternative theories, drawn from the law of the same sovereign, by which the same set of facts might give rise to a single liability." *Schexnaydre*, 527 F.2d at 856; *see also Ind. Harbor*

---

[8]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*Belt R.R. Co.*, 860 F.2d at 1445 (dismissing appeal from entry of partial final judgment on a strict liability count of the complaint when a pending negligence count was an alternative theory for identical relief).

The Section 5 Judgment is final because it adjudicated an entire claim that is separately enforceable without mutually excluding or substantially overlapping with the single-judge claims. First, the Amended Complaint does not simply present "a single inseparable claim for relief." *Lloyd Noland*, 483 F.3d at 780. The Amended Complaint presented claims under (1) Section 5 of the Voting Rights Act, (2) Section 2 of the Voting Rights Act, and (3) the Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution.[9] The Section 5 claim is procedural; it sought to force the Governor to seek preclearance for the change in appointment procedures. The Section 2 claim and the Constitutional claims are substantive; they seek a remedy for dilution of Plump's voting rights, for perpetuation of white supremacy, denial of equal protection of the laws, and denial of voting rights on account of race. In this way, then, the Section 5 claim on the one hand, and the Section 2 and Constitutional claims on the other, arise from different sets of facts—the Section 5 claim from the failure of Governor Riley to seek preclearance, and the Section 2 and Constitutional claims from the effects of the change in procedures. Second, rather than seeking "substantially similar relief," the requested remedies are different, which

---

[9]There is no need for us to decide whether the Section 2 claim substantially overlaps the Constitutional claims, and here we distinguish the Section 5 claim from the Section 2 and Constitutional claims rather than taking the unnecessary steps of distinguishing the Section 5 claim from the Section 2 claim and the Section 5 claim from each of the Constitutional claims.

reflects the differences in the facts that lead to the claims and the differences between the claims themselves. Because the wrongs are different, so are the remedies requested. Third, nothing about victory on the Section 5 claim would preclude victory on the Section 2 and/or Constitutional claims, so the claims are not mutually exclusive; Plump could have prevailed on both the Section 5 claim and the Section 2 and/or Constitutional claims. Finally, the Section 5 claims are so distinct from the Section 2 and Constitutional claims that Congress thought it necessary that the Section 5 claims, but not the other claims, be adjudicated by rare three-judge courts. In fact, we were empowered to hear *only* the Section 5 claims. *See City of Lockhart v. United States*, 460 U.S. 125, 129 n.3 (1983).

Therefore, the Amended Complaint presents not one inseparable claim for relief, but at least two. The Section 5 Judgment is separately enforceable and victory on that claim is not mutually exclusive with success on the others. Neither the wrongs alleged nor the remedies sought substantially overlap. The Section 5 Judgment, then, is "final."

### ii. "Judgment"

A disposition is a "judgment" if it is "a decision upon a cognizable claim for relief." *Lloyd*, 483 F.3d at 777 (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). The Section 5 Judgment is quite obviously a "judgment" for purposes of Rule 54(b) because "it is a decision upon a cognizable claim for relief." *Id.* The Section 5 claim presented a cognizable claim for relief pursuant to 42 U.S.C. § 1973c. We adjudicated Plump's claim under that code section and provided Plump declaratory relief. The Section 5 Judgment is therefore a "decision" on "a cognizable claim for relief." *See Lloyd*, 483 F.3d at 777.

16

### iii. No Just Reason for Delay

Having found that the Section 5 Judgment is final and is a judgment, we must now look to whether we previously determined that there was no "just reason for delay" in certifying it as final and immediately appealable. *Lloyd*, 483 F.3d at 777. The role of the district court in making this determination is one of "dispatcher." *In re Yarn Processing Patent Validity Litig.*, 680 F.2d 1338, 1339-40 (11th Cir. 1982). The determination involves "weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present. The absence of detailed criteria to guide the trial judges' exercise of discretion reflects a conscious decision by the Supreme Court not to restrict the operation of the rule within too narrow a framework." 10 Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 2659 (3d ed. 2009).

In reviewing the Memorandum Opinion and Order and the Section 5 Judgment, we are satisfied that we found that there was "no just reason for delay." The Section 5 Judgment concluded

> The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure so that appeal may be taken and the case consolidated with *Kennedy v. Riley*, 07-77, if the U.S. Supreme Court deems consolidation appropriate.

(Doc. # 33.) We admittedly did not use the phrase "no just reason for delay" in the Section 5 Judgment. However, the "unmistakably clear implication" was that this requirement of Rule 54(b) was satisfied. *Bullock v. Baptist Mem'l Hosp.*, 817 F.2d 58, 59 (8th Cir. 1987); *see Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 896 F.2d 923, 924 (5th Cir. 1990) ("no

particular language need be included in the judgment so long as the order reflects an unmistakable intent by the district court to enter an appealable order under Rule 54(b)."); *see also Ebramimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165-66 (11th Cir. 1997).[10] We expressly directed the Clerk to docket the Judgment as a final judgment pursuant to Rule 58 and a document titled Judgment was entered in fact.  Moreover, we stated in the Judgment the reason for our determination that there was no just reason for delay: the Supreme Court had, at the time we entered Judgment, granted certiorari in a closely related case and the interests of justice might have been served by consolidation of the cases on appeal. Therefore, we are satisfied that, at least for present purposes, we properly found that there was no just reason for delay, and properly entered a final judgment as to the Section 5 claim only.

---

[10]*Carringer v. Tessmer*, 253 F.3d 1322, 1324 (11th Cir. 2001) is not to the contrary. In *Carringer*, the Eleventh Circuit explained:

> Rule 54(b) mandates that, "when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an *express direction* for the entry of judgment." (emphasis added). Absent this express declaration, the order is not final and is not appealable because it is "not effectively unreviewable on appeal from a final judgment." *Pryor*, 180 F.3d at 1334. Here, the district court failed to make the express declaration as required by Rule 54(b). In order for this court to consider such an appeal, the district court must expressly accomplish what the Rule clearly mandates.

Here, there manifestly is an "*express direction* for the entry of judgment" in the Section 5 Judgment. (Doc. # 33) ("The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure so that appeal may be taken and the case consolidated with *Kennedy v. Riley*, 07-77, if the U.S. Supreme Court deems consolidation appropriate."); *see also Ebrahimi*, 114 F.3d at 166 (stressing the importance of the "ability to discern the reasoning that motivated the Rule 54(b) certification").

## 2. Conclusion—Mootness

If a party raises a fundamental jurisdictional issue such as mootness, "the court is obliged to consider the merits of the argument" no matter the stage of the litigation. *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitative Sers.*, 225 F.3d 1208, 1218 (11th Cir. 2000); *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1445 n.16 (11th Cir. 1987) ("[q]uestions of jurisdiction" such as mootness "can appropriately be raised at any time in the litigation"); *Carr v. Saucier*, 582 F.2d 14, 15-16 (5th Cir. 1978)[11] (per curiam) ("If a controversy becomes moot at any time during the trial or appellate process, the court involved must dismiss the suit for want of jurisdiction . . . . Mootness arguments . . . can be pressed by any party at any time[.]")  These cases, however, require a court to dismiss a case on mootness grounds during the pendency of the case as a live "case or controversy." *See, e.g.*, *Carr*, 582 F.2d at 15-16 ("If a controversy becomes moot *at any time during the trial or appellate process*, the court involved must dismiss the suit for want of jurisdiction.") (emphasis added).  The trial of the Section 5 claim ended in January, 2008.  The appeal process ended in November of that year.[12] Given the finality of the Section 5 Judgment pursuant to Rule 54(b), Governor Riley's argument reduces to a

---

[11]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[12] In his Motion to Vacate and Dismiss as Moot, the Governor argued that the case became moot November 12, 2008. (Doc. # 54 3.)  The Supreme Court entered its Order in this case on October 6, 2008, and it was received in the Middle District of Alabama and docketed on November 10, 2008. (Doc. # 53.)

position that a closed case is moot.  By the Governor's admission, the installment of William Bell into the disputed seat on the Jefferson County Commission by election clearly resolved the Section 5 conflict.  But not until after final judgment.  For these reasons, the Governor's Motion to Vacate and Dismiss as Moot is due to be denied.

## B. Single-Judge Court Claims

The issues to be decided by a three-judge court convened to adjudicate a claim under Section 5 are strictly limited. *City of Lockhart*, 460 U.S. at 129 n.3; *United States v. Bd. of Supervisors of Warren County, Miss.*, 429 U.S. 642, 645-47 (1977) (per curiam); *White v. State of Ala.*, 851 F. Supp. 427, 428 (M.D. Ala. 1994) (three-judge court).  These issues are: (1) whether a voting change is covered under Section 5; (2) whether it has been precleared; and (3) if a covered change has not been precleared, what remedy is appropriate. *McCain v. Lybrand*, 465 U.S. 236, 250 n.17 (1984); *Lockhart*, 460 U.S. at 129 n.3; *White*, 851 F. Supp. at 428-29; *Brooks v. State Bd. of Elections*, 838 F. Supp. 601, 607- 608 (S.D. Ga.1993) (three-judge court). It is the responsibility of a single-judge court acting pursuant to Section 2 of the Voting Rights Act to address allegations of substantive voting rights violations and to fashion any necessary relief.  *White*, 851 F. Supp. at 429.

Because of these tight circumscriptions on the jurisdiction of three-judge courts, when a single action alleging violations both of Section 5 and of  Section 2 and/or other related constitutional provisions, the three-judge court will sever the portion of the case over which it has jurisdiction from the remainder of the case, or, if it has resolved the Section 5 claims, will remand the other parts of the case to the single-judge Court to which the case was

assigned originally.  *See Bond v. White*, 508 F.2d 1397, 1400- 1401 (5th Cir. 1975)[13] (held that the three-judge court, after deciding Section 5 issues, properly remanded ancillary matters to the single-judge court); *Brooks*, 838 F. Supp. at 607- 608 (three-judge court severed the Section 2 portion of the case so that the single-judge court could consider the validity of a pending proposed consent decree); *United States v. City of Houston*, 800 F. Supp. 504, 508 (S.D. Tex. 1992) (Section 5 court stated that the single-judge court hearing a parallel Section 2 claim had jurisdiction to approve a settlement); *Edge v. Sumter County Sch. Dist.*, 541 F. Supp. 55, 57 (M.D. Ga.1981),  *aff'd*, 456 U.S. 1002 (1982) (three-judge court resolved Section 5 issues and remanded the case to a single-judge court to supervise development of a legally enforceable election plan); *Pitts v. Carter*, 380 F. Supp. 4, 8 (N.D. Ga.1974) (three-judge court enjoined implementation of uncleared voting changes and remanded to single-judge court the question of how to conduct future elections).  We therefore take this opportunity to remand the Section 2 claim and the constitutional claims to the single-judge court to which this action was initially assigned.

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that the Motion to Vacate and to Dismiss as Moot (Doc. # 54) is DENIED in part.  The Motion is denied insofar as it seeks dismissal of the Section 5 claims; this Order

---

[13]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

has no effect on the Section 2 and Constitutional claims, and the single-judge court will address the remainder of the Motion.

It is further ORDERED that Plaintiff's claims not founded on Section 5 of the Voting Rights Act are REMANDED to the single-judge court to which this case was originally assigned.

Done this the 13th day of July, 2009.

_____/s/ Rosemary Barkett_____
UNITED STATES CIRCUIT JUDGE


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE


_____/s/ W. Harold Albritton_____
SENIOR UNITED STATES DISTRICT JUDGE
